CHARLES DITZEL, Plaintiff and Respondent, v. RALPH V. KENT and EVA M. KENT, His Wife; LEWIS J. BEATY and FREDA E. BEATY, His Wife, Coopartners, Defendants and Appellants.

No. 9329.
Submitted March 21, 1957.  Decided March 27, 1957.
Rehearing Denied April 5, 1957.
308 Pac. (2d) 628.

130

Mr. Hugh J. Lemire, Miles City, Mr. Vincent Mulvaney, Cheyenne, Wyoming, for appellants.

Messrs. Colgrove & Brown, Miles City, for respondent.

Mr. Lemire, Mr. Mulvaney and Mr. Bruce M. Brown argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff, a licensed real estate broker, brought this action to recover the sum of $10,500 alleged to be the commission due him pursuant to a written contract of sale of real estate signed by defendant, Lewis J. Beaty, a copy of which is attached to the complaint. The property involved was alleged to belong to all the defendants as partners. The complaint alleges that the defendant, Lewis J. Beaty, signed the contract acting on behalf of the partnership and with the authority of all the named defendants; that the contract was wrongully breached by the defendants by selling the property later to G. W. Patterson.

Summons was served on defendant, Lewis J. Beaty, and he is the only one who appeared in the action. He filed an answer in which he denied all the allegations of the complaint except the sale of the property to Patterson. By an affirmative defense he alleged in substance that the record owner of some of the land was Kent and Beaty, a co-partnership, and the record owners of the rest were the four named defendants; that on March 24, 1951, when the contract was signed by him he was not acting as agent for the other three defendants or as a partner of any of them or with their authority; that the con-

tract which he signed shows on its face that the sellers were Lewis J. Beaty and Ralph V. Kent; that the contract was not signed by Kent, one of the sellers; that defendant Beaty was not acting for any partnership when he signed the contract; that plaintiff and the purported purchaser, Joseph Kejr, had personal knowledge that Lewis J. Beaty had no authority to act for the other defendants in signing the contract. The cause was tried to the court sitting with a jury, resulting in a verdict for plaintiff and against defendant, Lewis J. Beaty, in the sum of $10,500. Defendant Lewis J. Beaty's motion for a new trial was denied and he has appealed from the judgment.

The record discloses that after the necessary preliminary conferences were held plaintiff drafted, in writing, an offer on the part of Joseph Kejr to buy the lands in question. The offer contained a general description of the land commonly known as the Caprock Ranch, and an unqualified offer of Kejr to buy it for the sum of $210,000; recited the payment of a deposit of $20,000 and fixed the time for paying the balance. It contained a notation to see the reverse side for additional terms and conditions. On the reverse side among other conditions was a statement that the names of the sellers were Lewis J. Beaty and Ralph V. Kent.

The offer also contained an attached sheet which gave a description of the property and a recital that it represented "Holdings in Custer County of Ralph V. Kent and Eva M. Kent and Lewis J. and Freda E. Beaty" and was signed by the purported purchaser, Joseph Kejr. Following the offer were these statements:

"Undersigned Seller accepts the foregoing offer this 24th day of March, 1951, has been advised of and will pay to Agent a commission of 5% of Selling Price as proposed by schedule of Wyoming Real Estate Board, and that in event sale is not completed by Buyer's failure or refusal to do so and Seller elects to retain the deposit made herewith, as above provided, as fixed and liquidated damages, then such deposit shall be divided equally between the Seller and Agent; however the Agent shall

receive at least the amount which constitutes his regular commission, but said Agent shall, in no event, be entitled to receive or retain an amount in excess of the regular commission.

"Witness ................................................................................

Charles Ditzel.          Lewis J. Beaty

................................................................................

Sellers

"Received above mentioned deposit from Buyer, subject to all foregoing contractural provisions, the day and year first above written.

"Charles Ditzel

................................................................................

"Agent"

In the preliminary negotiations resulting in the written instrument all parties understood that the ranch property was held and owned by partners. Plaintiff testified as follows:

"Q. And did he [referring to Beaty] mention anything of his relation with anything else in connection with the ranch? A. Yes, Mr. Kent and the rest of the family that is in on the ranch all together.

"Q. Did Mr. Beaty mention it to you at that time when he came in? A. Yes.

"Q. What was it? A. Just through the general conversation that Mr. Kent was his partner and then Mrs. Kent was involved in the transaction and then Mrs. Beaty. In other words, all four of them were in on the same transaction.

"Q. Did he indicate to you that they were in partnership on the Caprock Ranch?. A. Yes. * * *

"Q. Did he mention anything about a partnership? A. Mr. Beaty and Mr. Kent at both times they come in they continuously discussed the arrangements that they were in together on this ranch deal.

"Q. Did they refer to the partnership? A. Partnership is the word used all the way through. * * *

"Q. Now, you mentioned here once about the partnership

there was a word used all the way through, what did you mean by that? A. You mean in the way they discussed it?

"Q. You made the statement in answer to a question here that the partnership was a word used all the way through? A. Yes, that's right. I mean by that that it had been mentioned in general discussions and general conversations.

"Q. So that you knew you were dealing with a partnership? A. Yes.

"Q. Consisting of whom? A. Mr. Beaty, Mr. Kent, Mrs. Beaty and Mrs. Kent."

Mr. Kejr testified that the sellers were first demanding a price of $235,000 and there was also discussion about trading in some Kansas and Colorado property but after that proposal was abandoned he offered to pay $210,000 and that Lewis J. Beaty said to him:

"Well, as far as I am concerned personally, he says, 'I am willing to take you up on that price', but he says, 'This is a partnership affair and Mr. Kent is with me', and he says, 'It would have to be approved and okayed by him. * * *

"Q. Did he say anything about discussing it with Mr. Kent? A. Yes., he says he cannot do anything because it's a partnership affair and it had to be satisfactory to both of them. * * * A. He told me he couldn't do anything without Mr. Kent's consent.

"Q. The four of you were in the car, is that right? A. Yes, sir."

The record bears out the conclusion that the agreement to pay the commission was dependent upon obtaining the signatures of the other joint owners of the property. Beaty, of course, was not interested in paying a commission for the sale of the land unless the entire ranch was sold. He was not interested in disposing of his undivided interest, nor was Kejr interested in buying any fractional interest in the property.

Beaty's counsel contend that the action was one brought against the partnership as an entity and that it was improper to obtain a verdict and judgment against the individual defendant, Lewis J. Beaty, personally. Counsel are in error in

supposing that this action is one against the partnership as a separate entity. The rule applicable here is stated in 68 C.J.S., Partnership, section 209, page 683, as follows:

"An action against certain named individuals as partners doing business under a certain firm name is an action against them as individuals, and is not an action against the partnership as a separate entity."

For cases supporting this view see Jones Trucking Co., Inc., v. Superior Oil Co., 68 Wyo. 384, 234 Pac. (2d) 802; Balley v. Davis, 75 Idaho 73, 267 Pac. (2d) 631, 44 A.L.R. (2d) 575; Ferry v. North Pacific Stages, 112 Cal. App. 348, 296 Pac. 679; Steele v. Wardwell, 57 Cal. App. (2d) 642, 135 Pac. (2d) 628. The statement of the representative character following the names of the parties is treated as *descriptio personae.* 67 C.J.S., Parties, section 100, page 1097.

Plaintiff, in contending that the verdict and judgment are proper, relies upon the rule stated in 40 Am. Jur., Partnership, section 148, page 235, as follows:

"As a general rule, the particular partner who undertakes to bind his co-partners by a contract without authority is himself personally liable on such a contract. He binds himself no matter in what name he contracts. The fact that he attempts to bind his partner and does not succeed does not avoid his own act. He can not be admitted to say that he was not authorized to make a contract, and he is estopped to deny its effect or validity."

Plaintiff relies upon the case of Brooke v. Glide, 39 Cal. App. 534, 179 Pac. 546; Lewis v. Clarkin, 18 Cal. 399; Morgan v. Righetti, 113 Cal. xvii, 45 Pac. 260; and Bonneau v. Strauss Brothers, 72 Okl. 110, 179 Pac. 10, 4 A.L.R. 255. Those cases are not applicable here for the reason that the partner who was held individually liable in those cases assumed to act for the co-partners or assumed to represent the partnership. Here as above indicated everyone concerned in this transaction knew and understood that the contract had no vitality until the signatures of the several parties were obtained. The case of Brooke v.

Glide, supra, was one where one of the partners purported to bind the partnership by signing the name of the partnership.

Unlike the Brooke case, here plaintiff knew throughout the dealings that the land was jointly owned. Beaty signed as one of the owners only, and did not purport to sign for the other joint owners. Plaintiff was in no way misled.

Plaintiff contends however, that Kent participated in the negotiations and orally assented to the terms and conditions of the offer by Kejr. He also contends that Beaty assumed to have authority to represent the joint owners since there was evidence that he stated that after the contract was written up by plaintiff one of these gentlemen would (meaning either Beaty or Kent) sign it.

This testimony is not sufficient to show that when Beaty signed the statement he assumed to act for the partners, particularly when he merely signed his own name and did not purport to sign for any of the other co-owners.

Likewise, as to Mrs. Beaty and Mrs. Kent there was no evidence that they participated in any of the negotiations. Plaintiff was not justified in supposing that the contract had any validity as against anyone until it was executed by or on behalf of all the sellers.

There are no statutes in this state that militate against this view. R.C.M. 1947, section 63-201, in part, provides:

"(1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

"(2) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way

136

does not bind the partnership unless authorized by the other partners.

"(3) Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to: * *

"(c) Do any other act which would make it impossible to carry on the ordinary business of the partnership,

*   *   *   *   *   *

"(4) No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction."

R.C.M. 1947, section 63-202, in part, provides:

"(4) Where the title to real property is in the name of one or more or all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of paragraph (1) of section 63-201.

"(5) Where the title to real property is in the names of all the partners a conveyance executed by all the partners passes all their rights in such property."

Paragraph 4 of this section has no application here, as contended by plaintiff, since plaintiff had knowledge of the fact that Beaty had no authority to bind the partnership, and is therefore ruled by the latter part of paragraph 1, section 63-201. Likewise the sale of all the property of a partnership is not the carrying on in the usual way of the business of a partnership within the meaning of section 63-201.

These statutes though relating to deeds and conveyances are not substantially different from those considered by the court in Ridgley v. First National Bank, C.C., 75 F. 808, 809, relating to mortgages of real property where the court said:

"There can be no valid mortgage of co-partnership property except by the instrument which shall be executed by all members of the co-partnership. I do not agree with counsel that an

instrument executed by part of the members of the co-partnership may be a mortgage of the interest of those members in the co-partnership property. In order to have a mortgage of that character, it would be necessary that the instrument on its face should purport to be a mortgage of the interests of the co-partners signing it. A mortgage which on its face is made to be a mortgage of the entire partnership property, and is signed by some of the members of the partnership, but not all, is, in my judgment, under this statute, a void instrument, of no force and effect, either of the partnership property, or the interest of the persons signing it in the partnership property.''

The case of Springer v. Simpson, 175 Ill. App. 631, takes a contrary view as respects the lease of property to a partnership. The court in that case held that where only one partner signs the lease as lessee, he was properly held liable for damages for breach of covenants of the lease. The principal holding however was that the point was not properly raised and hence turned on a question of procedure with but little consideration given to the point on its merits. Furthermore, in that case the lease was actually carried out by a change of possession of the property and hence there is reason to believe that the partner who signed the lease had authority to act for the partnership.

It follows that plaintiff is not entitled to recover on the ▇▇
[4] leged contract sued on.

The judgment is reversed and the cause remanded with directions to dismiss the action.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES and BOTTOMLY, concur.

MR. JUSTICE ADAIR, dissents.