753 P.2d 158

**Raul Barrero CANTON, Plaintiff/Appellee/Cross–Appellant,**

v.

**The MONACO PARTNERSHIP, an Arizona partnership, Defendant/Appellant/Cross–Appellee.**

**No. 2 CA–CIV 5693.**

Court of Appeals of Arizona, Division 2, Department B.

March 31, 1987.

Reconsideration Denied May 7, 1987.

Review Denied March 31, 1988.

Law Offices of William J. Risner by William J. Risner, Tucson, for plaintiff/appellee/cross-appellant.

Russo, Cox, Dickerson, Butler & Russo, P.C. by Randall M. Sammons, Tucson, for defendant/appellant/cross-appellee.

OPINION

HOWARD, Presiding Judge.

Defendant/appellant Monaco Partnership appeals from the trial court's award of specific performance to plaintiff/appellee Raul Barrero Canton. Appellee had contracted with Monaco Partnership to purchase a condominium unit on May 8, 1982. The negotiated terms were that appellee agreed to purchase Unit F–221 for $41,000, to put $4100 into an escrow account as a down payment, and to close the transaction by September 13, 1982. However, Monaco Partnership was not in a position to close on that date because the Federal Housing Administration required that a certain percentage of the units in the project be presold prior to closing any transactions. Thus, the parties entered into a second agreement under which appellee was permitted to live in the unit, rent-free, until such time as the transaction was closed. In exchange, appellee agreed to release his down payment to the sellers and to close the transaction within 30 days of his eligibility for closing.

As an incentive to attract purchasers for the Monaco Condominium Project, Monaco Partnership offered excellent financing to purchasers. Appellee was offered terms of 8% interest for 15 years through H.S. Pickerell Company. At the direction of Monaco Partnership's sales agent and partner, Dennis Triano, appellee went to H.S. Pickerell in June 1983 to complete the loan application. This loan was approved on June 30, 1983. Although appellee was

readily accessible by telephone in Mexico City, neither Pickerell nor Triano ever informed appellee that his loan had been approved.

In the summer of 1983, Monaco Partnership entered into a contract with Fountain Hills, Inc., to sell the entire condominium project to Fountain Hills. Contained in the contract was a clause that stated: "It is understood between the parties hereto that existing contracts are in escrov that have not yet been closed, some of which shall be terminated at the request of purchaser and under his specific direction."

Sometime in August 1983, Janis Durham, the escrow agent for U.S. Life Title, the escrow company for appellee's purchase, was asked by someone from Monaco Realty to set up a closing for appellee. Ms. Durham had the closing documents forwarded to her from H.S. Pickerell Company and then requested a Spanish-speaking secretary from Monaco Realty to call appellee in Mexico City to inform him of the scheduled August 19, 1983 closing date. The secretary recalled having a brief conversation with appellee two to three days prior to August 19, 1983. Appellee, however, recalls only receiving a message from his daughter about "signing for the mortgage."

Appellee came to Tucson in late August to close the transaction. He went to the escrow company and spoke to Carter Dickey, an accountant for Gary Triano, one of the general partners of Monaco Partnership. Mr. Dickey informed appellee that there was no longer any deal between appellee and appellant because Monaco Condominiums had been sold, and that appellee should go to Monaco Condominiums and speak to a William Sloat. Mr. Sloat, a principal for the purchaser, Fountain Hills, Inc., informed appellee that Monaco Partnership had sold the project and that he, Sloat, was the new owner. Mr. Sloat told appellee that he was free to purchase Unit F–221 from the new owners, but that appellee's sales agreement with Monaco Partnership was no longer valid. Sloat offered to sell appellee the unit for $59,000 and at a substantially higher financing rate. Appellee refused this offer.

At the time appellee spoke to Mr. Sloat, legal title to the condominium project was still vested in Monaco Partnership, which still had the legal capacity to perform on its contract with appellee. The sale of the condominium project did not close until the end of September 1983.

Appellee then filed suit against both Monaco Partnership and Fountain Hills, primarily on the grounds of breach of contract and fraudulent misrepresentation. Appellee sought specific performance and, alternatively, damages for the breach of his contract to purchase unit F–221 at the terms offered by Monaco Partnership through H.S. Pickerell. Specific performance as a remedy was contracted for in the purchase agreement between appellee and Monaco Partnership.

At trial, Monaco Partnership argued that there was a "time is of the essence" clause in appellee's purchase contract, that appellee had breached the contract by failing to close within 30 days of his eligibility to do so, and that Monaco Partnership had no further duty under the contract to appellee. Defendant Fountain Hills argued that it had no notice of a valid existing contract between appellee and Monaco Partnership when it purchased the project, and thus had no duty to sell the unit to appellee at the price agreed upon between them. The trial court found for appellee on the breach of contract claim and ordered specific performance against both defendants. The trial court also directed a verdict against the plaintiff on the fraudulent misrepresentation count. Monaco Partnership appeals from the award of specific performance. Fountain Hills and the remaining defendants have not appealed. Appellee has cross-appealed from the trial court's granting of a directed verdict againt him on his fraud claim.[1] We vacate the trial court's judgment of specific performance against Monaco but affirm the court's disposition of appellee's counterclaim.

1. Since there was no jury the court does not direct a verdict, it grants a motion for involuntary dismissal. See Rule 41(b), Rules of Civil Procedure, 16 A.R.S.

Monaco Partnership argues that specific performance was incorrectly ordered because it did not have title to the property at the time, having conveyed it to Fountain Hills in September 1983. Appellee argues that, while Monaco may not have had title, specific performance was a remedy which Monaco had agreed to in the contract. Additionally, appellee argues that part of the contract to purchase Unit F–221 was that appellant would furnish favorable financing. Appellee argues that the trial court entered specific performance against Monaco to compel Monaco to provide the financing contracted for by appellee.

Specific performance is available as a remedy to enforce contracts for the sale of real property because land is thought to be unique and the remedy of damages is usually considered inadequate. *Woliansky v. Miller*, 135 Ariz. 444, 446, 661 P.2d 1145, 1147 (App.1983). However, while wide discretion is afforded the trial court to determine an appropriate remedy, specific performance is never a matter of right. *Woliansky v. Miller, supra.* The issue here is whether the court below could award specific performance of a sales contract against Monaco when Monaco no longer had title to the property. The resolution of the question is governed by general equitable principles and *Grummel v. Hollenstein*, 90 Ariz. 356, 367 P.2d 960 (1962).

■ Because equity will not undertake to do a vain and useless thing, specific performance will not be awarded against a seller in a land contract when the seller has no title to the land he contracted to convey. 71 Am.Jur.2d Specific Performance § 126 (1973). This is true even where the want of title is caused by the seller's own action in conveying the property to a third party. *Grummel*, 90 Ariz. at 359, 367 P.2d at 963.

Thus, the court erred in awarding specific performance against Monaco insofar as that order required transferring title to appellee, since Monaco no longer had title. Appellee asserts, however, that specific performance should be enforced against Monaco because the contract obligated it not only to transfer title, but also to provide advantageous financing.

Equitable remedies such as specific performance are necessary only when the legal remedy such as damages is inadequate. Loss of advantageous financing may clearly be redressed by damages, and thus specific performance is not appropriate. Even if this court were inclined to fashion an equitable remedy for the enforcement of the contract for financing, it is not possible to grant specific performance when that performance depends on the acts or assent of a person not a party to the action. 71 Am.Jur.2d Specific Performance, § 92.

■ Appellee argues that, should this court find that specific performance was erroneously entered against Monaco, the case should be remanded for retrial on the issue of damages. We disagree. Appellee elected specific performance as his sole remedy for breach of contract at the close of the evidence. While it is true that a party cannot be forced to elect a remedy in advance of the case, he must do so at the conclusion of the case. *Edward Greenband Enterprises of Arizona v. Pepper*, 112 Ariz. 115, 117, 538 P.2d 389, 391 (1975). Once an election has been made with due knowledge of the facts, a party cannot complain if the remedy selected is inadequate. 28 C.J.S. Election of Remedies § 26. Appellee was allowed to plead inconsistent theories up until the conclusion of the trial. The decision to elect the remedy of specific performance was made after all the evidence on both sides had been presented and after a full discussion. The record does not support a claim, nor does appellee make one, that he elected specific performance mistakenly or in ignorance. Thus, appellee cannot now argue the theory he rejected in the trial court.

Additionally, even if appellee had not made a clear election of remedies, he failed to present any evidence of contract damages. Cf. *Woliansky v. Miller, supra; Grummel v. Hollenstein, supra.*

Appellee filed a cross-appeal from the trial court's ruling against him on his consumer fraud count. The trial court found that appellee had failed to make a claim of either common law fraud or consumer fraud, under A.R.S. § 44–1521. We find no

error and affirm the court's ruling regarding appellee's fraud count.

The judgment of the trial court ordering specific performance against Monaco is vacated. The remainder of the trial court's judgment is affirmed.

LIVERMORE, P.J., and
LACAGNINA, J., concur.