764 P.2d 736

John VINSON and Taeko Vinson, husband and wife, Plaintiffs–Appellants,

v.

MARTON & ASSOCIATES, an Arizona partnership; Larry B. Marton and Fanchon Marton, husband and wife; Larry Melcher and Jane Doe Melcher, husband and wife; Phyllis Laneback, an individual; Danielle Gillenwater–Civer, an individual; Mary Ann Silva and John Doe Silva; John J. Silva and Jane Doe Silva, husband and wife; Robert Creighton and Catherine Creighton, Trustees for the Robert and Catherine Creighton Trust; Celeste Silva Brock, Trustee for the Celeste Silva Brock Trust, Defendants–Appellees.

No. 1 CA–CIV 9502.

Court of Appeals of Arizona,
Division 1, Department B.

May 5, 1988.

Reconsideration Denied Aug. 15, 1988.

Reconsideration Granted and
Supplemental Opinion Filed
Aug. 16, 1988.

Review Denied Dec. 20, 1988.

2

Johnson, Blake & Kadish, P.C. by Ronald K. Blake, Kenneth W. Burford, Tempe, for plaintiffs-appellants.

Marton & Hall, P.A. by Kraig J. Marton, Phoenix, for defendants-appellees.

Paul M. Meador, Phoenix, for defendants-appellees Melcher.

Pasquale R. Cheche, Phoenix, for defendant-appellee Laneback.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Henry L. Timmerman, Phoenix, for defendant-appellee Gillenwater–Civer.

Romley & Romley by Arthur Romley, Phoenix, for defendant-appellee Silva.

## OPINION

KLEINSCHMIDT, Judge.

This is an appeal from summary judgment in favor of defendants in a lawsuit for specific performance of a real estate contract. We must determine (1) whether the sale of the property and the execution of a settlement agreement between some of the parties render this appeal moot, (2) whether a partnership agreement remained effective after the death of some of the original partners, (3) whether the unanimous consent of the partners was required to convey the partnership's sole asset, and (4) whether either party is entitled to summary judgment. We reverse the judgment and remand for further proceedings because we find disputed issues of material facts.

## FACTS AND PROCEDURAL HISTORY

On an appeal from summary judgment we view the evidence and inferences drawn from the evidence in a light most favorable to the party opposing the motion. *Sahf v. Lake Havasu City Ass'n for the Retarded and Handicapped*, 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986). So viewed, the record is as follows.

Marton & Associates was a partnership formed in 1960 for the purpose of buying, selling and exchanging real property. The partnership's sole asset was a 238 acre parcel of land near Buckeye, Arizona. The original partners were Larry Marton, Larry Melcher, Dr. A.J. Silva, Richard Stephenson, Dr. Franklin Laneback, Robert Creighton, Charles Johnston and Powell Gillenwater. After Dr. Silva's death, his interest in the property passed by inheritance to Mary Silva, John Silva and the Celeste Silva–Brock Trust; after Dr. Laneback's death, his interest passed to his widow Phyllis

Laneback; and after Powell Gillenwater's death, his interest passed to Danielle Gillenwater–Civer. Robert Creighton's interest was transferred to the Robert and Catherine Creighton Trust. The record does not disclose what happened to the interests of Richard Stephenson and Charles Johnston.

In November 1985, John Vinson entered into a contract to purchase the parcel of land owned by Marton & Associates. The purchase agreement was signed by Larry Melcher and John Silva for the sellers. Vinson alleged that Melcher, Sil·a and their realtor, C.B. Stauffer, represented that they were authorized to sign on behalf of the partnership. At the time Melcher signed the contract he held powers of attorney executed in 1979 from Larry Marton, the Creighton Trust and Phyllis Laneback. Stauffer informed Vinson that the land had been listed for sale by the partnership for several years.

Escrow instructions were issued on December 2, 1985, and were signed by Larry Marton, Larry Melcher, Mary Silva, Celeste Silva–Brock, John Silva, Phyllis Laneback, Robert Creighton and Catherine Creighton. Danielle Gillenwater–Civer was the only person with an interest in the property who did not sign the escrow instructions. After the escrow instructions were signed, Stauffer presented the partnership with another offer to purchase the property at a higher price. Subsequently, the partnership and the individual partners refused to convey the property to Vinson.

Vinson filed suit alleging two counts for breach of contract against the partnership and the individual partners and seeking specific performance of the contract. Alternatively, Vinson sought damages in a third count against John Silva and Larry Melcher for damages resulting from their having entered into a contract without authority to do so. In count four, the plaintiffs sought damages against Melcher, Silva, Stauffer, and P.R. Powell and Associates, Stauffer's employer, for false representation.

All parties filed motions and cross motions for summary judgment, and the trial court granted judgment in favor of defendants on the first two counts of the complaint. The judgment contains language making it final and appealable pursuant to Rule 54(b), Arizona Rules of Civil Procedure.

After the appeal relating to counts one and two of the complaint was filed, Vinson, Melcher, Powell and Stauffer entered into a settlement agreement respecting counts three and four. The settlement agreement specifically permitted Vinson to proceed with his appeal on counts one and two. Vinson agreed to release Melcher, Stauffer and Powell from any liabilities arising from the sale of the property at issue and not to sue Melcher individually or as a partner in Marton & Associates under counts one and two of the complaint. It permits Vinson to do whatever is necessary to preserve his rights to proceed against the other defendants under counts one and two of the complaint. Silva and his wife refused to enter into the settlement agreement.

## MOOTNESS

Marton & Associates and the individual partners filed a motion to dismiss the appeal on grounds of mootness because the property at issue was sold to a third party on June 29, 1987. [Hereinafter all appellees will be referred to as Marton & Associates unless the context requires a distinction of separate interests.] Vinson responded, arguing that relief should still be available to him in the form of damages if he prevails on appeal. This court took the motion under advisement for consideration with the appeal.

The judgment that is the subject of this appeal dismissed counts one and two of Vinson's complaint, which alleged breach of contract and sought specific performance against Marton & Associates and the individual partners. Vinson filed a motion in the trial court to amend the complaint to seek damages on the same breach of contract theories and to add a misrepresentation claim against Melcher, Silva and Stauffer. The trial court denied the motion as to those portions of the complaint covered by the summary judgment that was on appeal

but permitted other amendments. The counts remaining for resolution by the trial court pertain to the claims for damages against Melcher, Silva and Stauffer.

Vinson did not file the $445,000 supersedeas bond necessary to stay that portion of the judgment expunging the lis pendens on the property. The record suggests that Vinson was financially unable to do so. The property was sold during the pendency of this appeal.

In addition to opposing the motion to dismiss, Vinson filed a motion in this court for leave to amend his complaint to seek damages as an alternative to specific performance. This court denied the motion, indicating that the motion should be addressed to the trial court judge.

■ A decision becomes moot for purposes of appeal where as a result of a change of circumstances before the appellate decision, action by the reviewing court would have no effect on the parties. *Arizona State Bd. of Directors for Junior Colleges v. Phoenix Union High School Dist.*, 102 Ariz. 69, 73, 424 P.2d 819, 823 (1967). Marton & Associates contends that the sale of the property leaves Vinson without a remedy. It relies in part on *Canton v. Monaco Partnership*, 156 Ariz. 468, 753 P.2d 158 (App. 1987) to support this position. Monaco Partnership appealed from the trial court's award of specific performance to Canton. The judgment required Monaco to convey the title to a condominium to Canton under a specified financing arrangement. Monaco argued that it no longer had title to the property at the time of judgment. Division Two of this court reversed because specific performance cannot be granted where it is dependent upon the acts of a third person not a party to the litigation. Canton argued on appeal that if specific performance was held to be improperly granted, the case should be remanded for retrial on the issue of damages. The appellate court rejected this argument because Canton had elected specific performance as a sole remedy at the close of the evidence and had failed to present any evidence of contract damages.

■ The procedural posture of this case is much different from *Canton*. Although his pleadings requested only specific performance, Vinson had not been put to an election of remedies in the trial court. A person cannot be forced to elect before the conclusion of trial the theory he will advance or the remedy he will seek. *Edward Greenband Enters. v. Pepper*, 112 Ariz. 115, 117, 538 P.2d 389, 391 (1975). Even after trial, a party may move to amend his complaint to conform to the evidence. Rule 15(b), Arizona Rules of Civil Procedure. The issue addressed in the motions for summary judgment was not the appropriateness of specific performance versus damages. Rather, it was whether Vinson could establish a breach of contract against the partnership and the individual partners. At that time there was no indication that specific performance would be unavailable to Vinson. We therefore find that *Canton* does not govern this appeal.

We likewise find other cases relied upon by Marton & Associates to be inapplicable. *See May v. Fidelity & Deposit Co.*, 153 Colo. 29, 384 P.2d 737 (1963) (judgment creditor stipulated that it could not enforce a judgment against the homestead of a bankrupt debtor because of the sale of the property); *Haberer v. Newman*, 219 Kan. 562, 549 P.2d 975 (1976) (the trial court awarded specific performance to the vendee of certain property. The vendor appealed the judgment and then *voluntarily* conveyed the property to the vendee. The appeal was thereby found moot); *Edwards v. Hanna Lumber Co.*, 415 P.2d 980 (Okla.1966) (a junior lienholder's claim was rendered moot by virtue of a foreclosure by the first lienholder); *Schupak v. Dutch Inn of Orlando, Ltd.*, 614 F.2d 504 (5th Cir.1980) (party seeking specific performance from a vendor in bankruptcy failed to obtain a stay as required by bankruptcy rules. No claim was made for money damages.)

We must also consider whether Vinson's failure to file a supersedeas bond was an acquiescence in the judgment. In *Del Rio Land, Inc. v. Haumont*, 110 Ariz. 7, 514 P.2d 1003 (1973), the Arizona Supreme Court considered whether the appellant had

acquiesced in a judgment by failing to post a supersedeas bond to preclude enforcement of a judgment for specific performance requiring it to sell certain real property under specified terms. The court found that the appellant was financially unable to file the bond and faced a mortgage foreclosure on the property. These circumstances led it to sell the property to the appellee pursuant to the judgment. The court reiterated the well established rule that only a *voluntary* payment of a judgment or acquiescence in the judgment will preclude appellate relief and concluded that the appellant's sale of the property was involuntary. *See Webb v. Crane,* 52 Ariz. 299, 80 P.2d 698 (1938); *Freeman v. Wintroath Pumps,* 13 Ariz.App. 182, 475 P.2d 274 (1970). It reversed the judgment of specific performance against appellant, even though the property had been conveyed to appellee.

*Del Rio Land* differs from the instant case in that the sale was not to third parties. However, the case supports the position that failure to file a supersedeas bond and to stay a judgment for specific performance will not by itself moot an appeal even where the property has been sold. *Accord Collins Music Co. v. Cook,* 281 S.C. 580, 316 S.E.2d 418 (App.1984). It recognizes that, where economic circumstances make it untenable to post a bond, the failure to post the bond is not a voluntary acquiescence in the judgment. We conclude that Vinson's failure to post a bond was not an acquiescence in the judgment.

We must also determine whether Vinson could be granted any relief if he prevails on appeal. *Grummel v. Hollenstein,* 90 Ariz. 356, 367 P.2d 960 (1962), is instructive on Vinson's right to relief. Hollenstein sought specific performance of a contract to convey real property. After suit was filed, a portion of the property was sold to a third party, making it impossible for the court to grant specific performance. The trial court awarded Hollenstein money damages in lieu of specific performance, even though Hollenstein's pleadings requested only specific performance. Quoting from its opinion in *Mackey v. Spangler,* 81 Ariz. 113, 116, 301 P.2d 1026, 1028 (1956), the Arizona Supreme Court stated:

A complainant will not be denied legitimate relief merely because he might have misjudged the proper theory. If the facts legally proven under the pleadings entitled plaintiffs to relief under any theory, the court should award the same.

90 Ariz. at 360, 367 P.2d at 964.

Marton & Associates argues that Arizona law permits damage claims in lieu of specific performance only to the direct parties to the contract. From this, it concludes that only those individuals who signed the contract could be liable for damages and that these individuals are already subject to damages pursuant to the claims remaining in the trial court. This analysis is incorrect for several reasons.

It is an elementary principle of partnership law that partners are jointly and severally liable for partnership debts and obligations. A.R.S. § 29–215. If Vinson prevails in establishing that the contract at issue was entered into by certain individuals who had authority to obligate the partnership, the partnership itself and each partner would be liable for damages for breach of contract.

If Vinson prevails on appeal, he is in a position to move to amend his complaint in the trial court and assert a claim for damages in lieu of specific performance. Thus, this appeal is not moot.

We next consider whether the settlement agreement entered into while this appeal was pending renders the case moot as to any party. Silva brought the settlement agreement to our attention by filing a Request that Court take Judicial Notice in connection with the issue of mootness. The question posed is whether the dismissal of the third claim for relief brings into play the doctrine of res judicata, precluding any recovery against the Silvas on the first and second claims. The settlement agreement does not preclude recovery against the Silvas, because the third claim for relief is based upon the theory that Silva never had authority to enter into the contract. This is an entirely different theory than that raised in the first claim, where the

plaintiffs alleged that Silva was authorized to execute the contract but breached it. It is an entirely different theory than that raised in the second claim where the allegation was that if Silva did not have authority to execute the contract his partners were estopped to deny his lack of authority. Therefore, we conclude that Vinson still has viable claims against all partners with the exception of those claims which he expressly agreed not to pursue against Melcher in the settlement agreement.

## THE SALE WAS CONTROLLED BY THE PARTNERSHIP AGREEMENT

[7] The trial court's minute entry granting summary judgment provides in part:

The plaintiffs entered into a contract for the sale of the sole partnership asset of the defendant partnership with some but not all of the partners. The plaintiffs contend that Article VII of the Partnership Agreement allows a majority of the partners to conduct all business of the partnership. *Because a number of original partners are now deceased, this provision is not controlling* upon the successor partners. (All apparently agree that a partnership of some sort does exist.)

With no controlling language in the agreement, the provision of A.R.S. section 29–209 controls. In a recent decision the Court of Appeals has held that the concurrence of all of the partners is necessary to conclude a sale such as the one proposed in this case. *Jolly v. Kent Realty, Inc.* [151 Ariz. 506, 729 P.2d 310 (App.1986) ], 1 CA–CIV 8386 (filed June 19, 1986). (Emphasis added.)

In referring to A.R.S. § 29–209 as controlling, the trial court was apparently relying on subsection (C)(3) of that statute, which requires unanimous consent of the partners to do any act that would make it impossible to carry on the ordinary business of the partnership. We disagree with the trial court's conclusion that the death of some of the partners rendered the partnership agreement inapplicable to this transaction. Article IX of the agreement provides:

It is further agreed that *the death or insanity of one or more of the partners of this partnership shall not dissolve the partnership*, but the same shall be continued by the remaining partners, and in the event of the death of any partner his personal representative shall immediately offer the partnership interest of the deceased partner for sale, first to the partnership and upon its refusal, then to as many of the partners individually as wish to participate, at its actual value to be determined by three arbitrators.... (Emphasis added.)

Accordingly, the partnership agreement pursuant to its own terms continued in force after the death of any partner.[1]

Arizona Revised Statutes § 29–218 provides in part that "[t]he rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them*, by the following rules...." (Emphasis added.) Other jurisdictions that, like Arizona, have adopted the Uniform Partnership Act, recognize that partners may agree to terms different from the Uniform Partnership Act and be bound by those terms. *See, e.g., In re Imperial "400" Nat'l., Inc.*, 429 F.2d 671 (3d Cir.1970); *Saballus v. Timke*, 122 Ill. App.3d 109, 77 Ill.Dec. 451, 460 N.E.2d 755 (1983); *Fortugno v. Hudson Manure Co.*, 51 N.J.Super. 482, 144 A.2d 207 (1958).

---

1. We find nothing in the record to indicate whether the personal representatives of the deceased partners took any action as required by Article IX of the partnership agreement. Because the effect of any failure by the personal representative of an individual partner to comply with Article IX has not been argued below or on appeal, we do not address the consequences of any such failure. *See* A.R.S. § 29–241. In any event, Mary Silva, John Silva, Celeste Silva–Brock Trust, Phyllis Laneback and Danielle Gillenwater–Civer all claim an interest in the property through inheritance. Their only interest in the property is the inheritance of the partnership interest owned by their respective decedents. With the exception of Danielle Gillenwater–Civer, the individuals who inherited an interest appear to agree that they are involved in some kind of partnership arrangement. Whether a partnership by estoppel resulted has not been argued at trial nor on appeal. *See* A.R.S. § 29–216.

The rule that a partnership agreement controls over the Uniform Partnership Act has been acknowledged specifically with respect to death provisions in such an agreement. *See, e.g., Matter of Rosmarin,* 107 A.D.2d 689, 484 N.Y.S.2d 44 (1985), *appeal denied* 65 N.Y.2d 605, 493 N.Y.S.2d 1027, 482 N.E.2d 1230 (1985); *Gerding v. Baier,* 143 Md. 520, 122 A. 675 (1923); *Underdown v. Underdown,* 279 Pa. 482, 124 A. 159 (1924); *Pailthorpe v. Tallman,* 87 N.Y.S.2d 822 (Supp.1949), *affirmed* 276 App.Div. 823, 93 N.Y.S.2d 712 (1949).[2] Accordingly, we find that the partnership agreement remained effective and there was no dissolution of Marton & Associates because of the death of some of the original partners.

## UNANIMOUS CONSENT OF ALL PARTNERS WAS NOT REQUIRED FOR THE SALE OF THE PROPERTY AT ISSUE

■ Article VII of the partnership agreement provides in part:

*All business* of this partnership shall be carried on by and only by, the majority vote of the partners, however, it is agreed that this partnership shall never allow the annual payments on its investment to exceed $500 per unit without the unanimous written consent of the partners.... (Emphasis added.)

Marton & Associates argues that Article VII does not govern the sale of the sole partnership asset because it is not a sale in the ordinary course of business. Rather, it argues that the sale is controlled by the provisions of A.R.S. § 29-209, which requires a unanimous vote of the partners.

Vinson contends that A.R.S. § 29-209 is inapplicable because the partnership agreement expressly permits an act with less than a unanimous vote. He argues that "all business" includes a sale of the partnership's sole asset. He also argues that,

even assuming arguendo that "all business" means the "ordinary business" of the partnership, this sale was in the ordinary course of business under A.R.S. § 29-209.

Arizona Revised Statutes § 29-209(A) provides:

Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently *carrying on in the usual way the business of the partnership* of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

Arizona Revised Statutes § 29-209(C) provides that the authorization of all partners is required to do certain acts, including:

2. Dispose of the good-will of the business.

3. Do any other act which would make it impossible to carry on the ordinary business of a partnership.

Marton & Associates cites cases standing for the general proposition that unanimous consent of all partners must be obtained in order to sell the capital assets of the partnership. *See Petrikis v. Hanges,* 111 Cal. App.2d 734, 245 P.2d 39 (1952); *Ditzel v. Kent,* 131 Mont. 129, 308 P.2d 628 (1957); *In re Verrazzano Towers, Inc.,* 10 B.R. 387 (Bkrtcy.E.D.N.Y.1981); *Feingold v. Davis,* 444 Pa. 339, 282 A.2d 291 (1971).

However, numerous cases interpreting § 9 of the Uniform Partnership Act (A.R.S. § 29-209) hold that where the business of the partnership is to sell real estate, the sale of real estate, including real estate that is the sole partnership asset, is a sale in the usual course of business. *See Owens v. Palos Verdes Monaco,* 142 Cal.App.

---

**2.** We note further that Marton & Associates' motion for summary judgment did not assert that Article VII of the partnership agreement was not binding because the partnership had been dissolved upon the death of some of the original partners. Rather, the motion for sum-

mary judgment was based on the assertion that the consent of all partners was required to sell the property because it was the sole asset of the partnership, and Civer had not consented to the sale.

3d 855, 191 Cal.Rptr. 381 (1983); *Ball v. Carlson,* 641 P.2d 303 (Colo.App.1981); *Kristerin Dev. Co. v. Granson Inv.,* 394 N.W.2d 325 (Iowa 1986); *Meisner v. Crane,* 131 App.Div.2d 934, 516 N.Y.S.2d 801, *appeal denied* 70 N.Y.2d 613, 524 N.Y.S.2d 431, 519 N.E.2d 342 (1987); *Stone–Fox, Inc. v. Vandehey Dev. Co.,* 290 Or. 779, 626 P.2d 1365 (1981).

Marton & Associates cites *Jolly v. Kent Realty, Inc.,* 151 Ariz. 506, 729 P.2d 310 (App.1986), for the proposition that the sale of a sole partnership asset requires unanimous approval of all partners under A.R.S. § 29–209. This misstates the holding of that case. In *Jolly* this court found that the sale of the partnership's capital asset was not "carrying on in the usual way of business" under A.R.S. § 29–209(A). In concluding that one partner could not bind the partnership to the sale of an apartment complex, the court found no evidence to establish that the partnership's "usual business" was the "selling or exchanging of apartment investments." It treated the partnership as one whose "usual business" was *operating* the apartment complex. Thus, the court held that one partner could not bind the partnership to a sale of the complex because the agreement provided that 51% of the partners approve "decisions affecting the future worth of the investment." *Id.* at 508, 729 P.2d at 312.

In contrast to *Jolly* the record in this case reflects that the partnership was established to buy and sell property. It held the undeveloped land as an investment to sell for profit. This was its only business—its "stock in trade."

*Kristerin* involved circumstances very similar to the instant case. In 1976, the partnership bought an apartment building. In 1980, the building was listed for sale with a realtor. Two of the three partners executed the purchase contract and assured the buyer that two signatures were sufficient to bind the partnership. The partnership ultimately refused to go through with the sale, and the buyer sued for breach of contract. The trial court directed a verdict in favor of the partnership on grounds that the partnership could only be bound by a contract signed by all partners. In reversing the trial court the Iowa Supreme Court stated:

[A] contract executed by one partner alone to sell partnership real estate is binding on the other partners provided the partnership is in the business of buying or selling real estate ... *quoting Owens v. Palos Verdes Monaco,* 142 Cal. App.3d at 865, 191 Cal.Rptr. at 387 (*quoting Ellis v. Mihelis,* 60 Cal.2d 206, 217–18, 384 P.2d 7, 14, 32 Cal.Rptr. 415, 422 (1963).

The Iowa Supreme Court considered Iowa Code § 544.9(1) [A.R.S. § 29–209(A)] and found that the "apparent scope of the partnership business depends primarily on the conduct of the partnership and its partners and what they cause third persons to believe about [their] authority...." *Kristerin,* 394 N.W.2d at 330, *quoting Blackmon v. Hale,* 1 Cal.3d 548, 557, 83 Cal.Rptr. 194, 199, 463 P.2d 418, 423 (1970). Further, the court rejected the partnership's contention that the fact that the partnership owned only one asset took the sale out of the "usual course of business."

Vinson argues that, since Marton & Associates was in the business of investing in land, the fact that it sold its sole asset did not prevent it from continuing business. It could have chosen to reinvest in other property. A partnership in the business of buying and selling property does not necessarily cease to do business if it sells all its real property. Thus, he argues that A.R.S. § 29–209(C) is not applicable to this transaction. We agree.

In addition, we find that the partnership agreement itself authorizes "all business" to be transacted by a majority vote with one stated exception—the authorization of investment expenditures to exceed $500 per unit. The expression in a contract of one or more things in a class implies the exclusion of all other things. *Herman Chanen Constr. Co. v. Guy Apple Masonry Contractors,* 9 Ariz.App. 445, 447, 453 P.2d 541, 543 (1969). Thus, by identifying expenditures as requiring unanimous approval, the contract impliedly excludes other decisions. We find that under the partner-

ship agreement and A.R.S. § 29–209, a majority of the partners of Marton & Associates had authority to sell the real property at issue.

## VINSON WAS NOT ENTITLED TO SUMMARY JUDGMENT

Vinson next contends that there was undisputed evidence that the majority of the partners had authorized the sale to Vinson. Vinson bases this contention on two grounds: (1) at the time he signed the contract of sale, Melcher held powers of attorney from Larry Marton, Phyllis Laneback and Robert Creighton, a combined partnership interest in excess of 50%; and (2) all persons with any interest in the partnership with the exception of Civer ratified the action of Melcher and Silva by signing the escrow instructions.

We find the record contains disputed issues of material fact with respect to the powers of attorney executed in 1979. There are statements from some of the individuals that there was no intent that this power of attorney should extend to the sale in question. There are also factual questions with respect to whether Melcher purported to act for the partnership and whether he had apparent authority to act on behalf of the partnership. There are also affidavits from various partners who signed the escrow instructions stating that their signatures were specifically conditioned upon obtaining the signatures of all other partners. Given these disputed facts, we find that summary judgment in favor of Vinson would be inappropriate.

Summary judgment in favor of defendants is reversed, and this matter is remanded to the trial court for proceedings· in accordance with this opinion.

BROOKS, P.J., and EUBANK, J., concur.

## SUPPLEMENTAL OPINION

KLEINSCHMIDT, Judge.

Subsequent to the filing of *Vinson v. Marton & Associates,* (1988) [see 159 Ariz. 1 at page 5, 764 P.2d 736 at page 740], appellees Marton & Associates, Larry B. Marton and Fanchon Marton (hereinafter appellees) filed a Motion for Reconsideration. Appellees argue that our opinion is improperly decided.

Their objections stem from the following language:

> *Del Rio Land* differs from the instant case in that the sale was not to third parties. However, the case supports the position that failure to file a supersedeas bond and to stay a judgment for specific performance will not by itself moot an appeal even where the property has been sold. *Accord Collins Music Co. v. Cook,* 281 S.C. 580, 316 S.E.2d 418 (App.1984). It recognizes that, where economic circumstances make it untenable to post a bond, the failure to post the bond is not a voluntary acquiescence in the judgment. We conclude that Vinson's failure to post a bond was not an acquiescence in the judgment.

Appellees read that language as inferring that our conclusion that Vinson did not acquiesce in the judgment was based only on hints from the record suggesting that Vinson did not have the money to pay for a supersedeas bond to stay the sale of the property in dispute. Appellees also point out that Vinson has paid at least part of the attorney's fees assessed against him in the trial court, and they argue that was an acquiescence in the judgment.

However, our holding, based on *Del Rio Land, Inc. v. Haumont,* 110 Ariz. 7, 514 P.2d 1003 (1973), is intended to be grounded in a broader principle. *Del Rio Land*

holds that payment of a judgment will preclude an appeal only when the payment is voluntary. *Id.* Only payments made "by way of compromise and settlement or under an agreement not to appeal or under circumstances leaving only a moot question for determination" are considered to be voluntarily made. *Id.* at 10, 514 P.2d at 1006. In this case, there was no compromise and settlement, no agreement not to appeal and, as we held in our original opinion, the question of damages is not moot.

Where an appealable issue remains, failure to post a supersedeas bond will not moot an appeal. *Freeman v. Winthroath Pumps—Div. of Worthington Corp.,* 13 Ariz.App. 182, 475 P.2d 274 (1970). Therefore, even if Vinson paid part of the judgment or failed to purchase a supersedeas bond when he had the means to purchase one, he did not acquiesce in the judgment.

In all other respects, our decision remains unchanged.

BROOKS, P.J., and EUBANK, J., concur.