NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:
THE DONALD R SCHULTZ AND JUANITA Q SCHULTZ LIVING
TRUST, DATED JULY 25, 1996 An Arizona Trust.

ERIK SCHULTZ, *Petitioner/Appellant/Cross-Appellee,*

*v.*

MARTA SCHULTZ, *Respondent/Appellee/Cross-Appellant.*

No. 1 CA-CV 17-0326
FILED 5-8-2018

Appeal from the Superior Court in Yavapai County
No.  V1300PB201580097
The Honorable John David Napper, Judge

**AFFIRMED**

COUNSEL

Law Office of Marguerite Kirk PLLC, Prescott
By Marguerite A. Kirk
*Co-Counsel for Petitioner/Appellant/Cross-Appellee*

Hans Clugston PLLC, Prescott
By Hans Clugston
*Co-Counsel for Petitioner/Appellant/Cross-Appellee*

Musgrove Drutz Kack & Flack PC, Prescott
By Mark W. Drutz, Jeffrey Gautreaux, Andrew J. Diener
*Counsel for Respondent/Appellee/Cross-Appellant*

------

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Maria Elena Cruz joined.

------

**W E I N Z W E I G**, Judge:

¶1		This is a dispute between sibling co-trustees for control of a family trust. Erik Schultz ("Brother") petitioned the superior court to remove Marta Schultz ("Sister") as co-trustee. The court denied his petition after significant litigation, including a five-day trial. The court found Brother had not met his burden of proof for removal. Brother appeals from the denial and Sister cross-appeals. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2		Donald Schultz ("Father") and Juanita Schultz ("Mother") created a living trust in 1996, naming themselves as co-trustees and primary beneficiaries. At present, the trust assets include Mother's former home in Cornville, a rental property in Cottonwood, a Sunlight investment account, a bank account holding rental income and two vehicles.

¶3		Mother became sole trustee after Father died in February 2012, but Alzheimer's disease rapidly consumed her health. Upon the death or incapacity of Mother and Father, the trust directed that Brother

2

and Sister would serve as successor co-trustees. In August 2013, Brother petitioned the superior court to disqualify Mother as trustee based on her incapacity. The court granted the petition in October 2013 and confirmed Brother and Sister as co-trustees.

¶4 Problems soon arose. The trust required joint action by co-trustees, including their joint consent and signatures, but Brother and Sister shared a hostile, dysfunctional relationship that devolved into conflict and inaction. Brother complained that Sister would not communicate about trust administration issues, including investments, sale decisions and planning for Mother to receive public benefits.

¶5 Brother and Sister tried mediation, which resulted in a February 2014 written agreement to, among other things, open a trust bank account to receive rental proceeds from the Cottonwood property. But their tenuous relationship continued to erode. And in September 2015, Brother petitioned the Yavapai County Superior Court to either remove Sister as co-trustee or direct that Brother had unilateral authority to administer the trust. Brother argued that removal was appropriate under A.R.S. § 14-10706(B)(2) because Sister's lack of cooperation substantially impaired administration of the trust and under A.R.S. § 14-10706(B)(3) because Sister was unfit, unwilling and persistently failed to administer the trust for the benefit of Mother. He complained, in particular, that Sister never opened the agreed-upon trust bank account; did not participate in creating a management plan for trust assets; and prevented him from selling the Cornville home.

¶6 Sister objected. She argued that Brother had tried to marginalize her involvement in the trust since their appointment as co-trustees. She claimed that Brother was responsible for problems with the management plan and bank account. She nonetheless proposed an alternative trust management plan that vested Brother with "sole signatory authority over Trust assets," subject to her oversight and consent, and included a mediation clause.

¶7 Despite shared animosity, Brother and Sister resolved some issues during the course of litigation. First, they stipulated to modify the trust, vesting Brother with sole signatory authority over trust bank accounts in January 2016. The stipulation enabled Brother to open a single-signature trust bank account. He immediately did so. Second, after seeking input from real estate professionals, Sister agreed that Brother could sell the Cornville home and retain Brother's listing agent. Third, Sister conceded

3

that Mother needed benefits planning and agreed that Brother should move forward on that front.

¶8          The superior court ultimately held a five-day bench trial.  The parties introduced more than 50 exhibits and called six witnesses, including Brother, Sister, a bank representative, two real estate agents and a hired caretaker (by deposition testimony).

¶9          Brother and Sister presented conflicting evidence and narratives.   Sister argued that she was both capable and willing to administer the trust and that no basis existed for her removal as co-trustee.  She presented evidence that she knew the extent of trust assets and emphasized that the parties had largely resolved Brother's complaints.  She also pointed to her proposed trust management plan as evidence of her interest and engagement in trust administration.  Sister urged the court to adopt her plan to resolve any lingering administration concerns.

¶10          Brother countered that Sister had repeatedly stymied his efforts to administer the trust for Mother's benefit.  He pointed to Sister's initial objection to becoming a co-trustee, refusal to open a trust bank account, "stonewall[ing] on public benefits planning and the disposition of real estate," refusal to compensate him for repairs of trust property and failure to provide documents and information for an estate management plan.  Brother also objected to Sister's proposed trust management plan as unauthorized and unworkable.

¶11          After considering all evidence and argument, including documents, testimony and trial briefs, the superior court denied Brother's petition to remove Sister as co-trustee.  The court found that Brother had not met his burden of proof and largely adopted Sister's proposed trust management plan, vesting Brother with authority to administer the trust assets subject to Sister's oversight and consent.   Brother was directed to send monthly trust account statements to Sister and to provide notice of investment decisions and transactions of $2,500 or more, along with notice of contracts for the sale or rental of trust property.  Sister could object to investment decisions or transactions within five calendar days.

¶12          The court denied attorney's fees "on both sides" but later granted Sister her costs as the prevailing party.  After the trial, Brother filed a motion for correction, clarification or, alternatively, reconsideration of the court's order.  The court summarily denied the motion.

¶13          Brother timely appealed and Sister cross-appealed.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

### A.    Mootness.

¶14        Mother passed away during the pendency of this appeal.  The parties dispute whether and how her death impacts the appeal.  Sister argues the appeal is moot because Brother only sought her removal to protect Mother.

¶15        That argument fails.  This appeal is not moot because our decision still has real effects on the rights and duties of the parties.  *Vinson v. Marton & Assocs.*, 159 Ariz. 1, 4 (App. 1988) ("A decision becomes moot for purposes of appeal where as a result of a change of circumstances before the appellate decision, action by the reviewing court would have no effect on the parties.").  Mother's death did not terminate the trust or relieve Brother and Sister of their ongoing duties as co-trustees.  Rather, the administration of the trust continues, and Brother and Sister must carry out their responsibilities as provided by the terms of the trust and the superior court's order.

### B.    General Principles.

¶16        The decision whether to remove a trustee lies within the sound discretion of the superior court and we will not reverse that decision absent an abuse of discretion.  *See* A.R.S. § 14-10706(A)-(B); Restatement (Third) of Trusts § 37 cmt. f (2003).  The superior court's decision is entitled to deference because it is based upon an assessment of evidence and witness credibility.  *In re Estate of Newman*, 219 Ariz. 260, 271, ¶ 40 (App. 2008).

¶17        Our task is limited accordingly.  We do not reassess "conflicting evidence or redetermine the preponderance of the evidence, but examine the record only to determine whether substantial evidence exists to support the trial court's action."  *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999).  We also accept the superior court's factual findings unless they are clearly erroneous.  *Newman*, 219 Ariz. at 265, ¶ 13.

### C.    Removal of Co-Trustee.

¶18        Brother argues the superior court should have removed Sister as co-trustee. We begin with two fundamental precepts.  Mother and Father's express preference and designation of Brother and Sister as successor co-trustees is entitled to great deference and should not be lightly

5

reversed. *Id.* at 270-71, ¶ 39. And, Brother shoulders the burden of proof to remove Sister as co-trustee. *In re Taylor's Estate*, 5 Ariz. App. 144, 147 (1967).

¶19        We find the record contains substantial evidence supporting the superior court's determination. Although Brother and Sister have frequently clashed, the record does not indicate that Sister should be removed as co-trustee based on lack of cooperation. A.R.S. § 14-10706(B)(2).[1]

¶20        To begin, the superior court heard all the evidence and rebuffed any argument that Sister was wholly responsible for all sibling discord and administrative delay. The court instead placed meaningful blame at Brother's feet:

> [Brother] in some instances . . . set out to make sure that he wouldn't get cooperation from [Sister]. . .. [He] is one of those guys that tries to control everything and tries to bully [Sister] around. And that's been apparent in this litigation to me by listening to him testify and by gauging the way that he acted under certain circumstances.

¶21        The record also contains substantial evidence to share the blame. Brother had a propensity to pivot and, more than once, changed his position after the parties had reached an agreement. For instance, Brother only insisted upon sale of the Cornville home after he agreed to accept "unilateral authority to prepare and rent" the home. Brother later agreed to resolve various issues at a pretrial conference, but then refused to sign the stipulation memorializing the agreements.

¶22        Second, while Brother emphasized that Sister failed to open a trust bank account, the record contained evidence showing that Sister withheld her consent because Brother misrepresented the character of the trust on at least one application.

¶23        Third, the record indicates that Brother was litigious and intimidating. He sued Sister more than once before filing his petition,

---

[1]        The Uniform Trust Code recognizes that an appointment of co-trustees inherently complicates the decision-making process. *See* Uniform Trust Code § 703 cmt. We assume the legislature adopted those comments. *State v. Sanchez*, 174 Ariz. 44, 47 (App. 1993) (stating that when statutes are based on model acts, Arizona courts assume the legislature meant to adopt the comments to the model acts).

including an action in California alleging defamation and intentional infliction of emotional distress.[2] He also threatened to sue Mother's caretaker for $250,000. The caretaker testified that Brother later forced him to sign affidavits that Brother had prepared, presumably under the threat of litigation. In addition, the court heard evidence, albeit conflicting, that Brother moved Mother to Massachusetts without Sister's knowledge or consent.

¶24 And last, Brother complained that Sister refused to compensate him for repairing the Cornville home, but the record indicates that Sister questioned his proposed rates and unverified hours, asked him for professional estimates and only refused compensation after she received no estimates.

¶25 We further note that Sister resolved most of Brother's trust administration issues before trial. She agreed to modify the trust to allow Brother to manage trust bank accounts without her signature, agreed to sell rather than rent trust property, agreed to establish a protocol for handling offers to purchase, agreed that Mother needed benefits planning and agreed that Brother should take the lead.

¶26 Nor does the record demonstrate that Sister was unfit, unwilling or persistently failed to administer the trust for Mother's benefit. A.R.S. § 14-10706(B)(3). The record instead indicates that Sister knew the extent of the trust's assets; stipulated to give Brother sole signatory authority over trust bank accounts; sought information about selling and renting trust-owned real property; communicated with Brother regarding the same; agreed that Mother needed benefits planning; authorized Brother to retain an attorney for that purpose; and proposed a trust management plan that the superior court partially adopted.

¶27 Brother insists he, too, presented substantial evidence that Sister should be removed as co-trustee. But he misses the point. Our singular inquiry is to determine whether the record contains substantial evidence to support the superior court's decision. Thus, even assuming Brother did present substantial evidence in his favor, it is "of no significance so long as there is evidence to support the trial judge's findings." *Newman*, 219 Ariz. at 271, ¶ 40. "[I]t is not the function of this court to reweigh the

---

[2] Brother argues that we cannot consider the California lawsuit because it was not published under Arizona Supreme Court Rule 111(d). But we do not cite the lawsuit as precedential. We only consider it as reflective of prior litigation between Brother and Sister.

facts or to second-guess the credibility determinations of the judge who had the opportunity to evaluate the witnesses' demeanor and make informed credibility determinations." *Id.*

**¶28**     In sum, substantial evidence exists to support the superior court's finding that Sister should not be removed as co-trustee. The court did not err.[3]

## D.     Final Order.

**¶29**     Brother next contends the superior court issued inconsistent preliminary and final orders. Brother argues the court initially directed that he would have "sole authority" over trust assets, but excluded that language in the final order.

**¶30**     We are not persuaded. The superior court never granted Brother sole, unconditional authority over the trust assets. While the court orally indicated that Brother would have "sole authority over trust assets," it imposed express limitations on that authority. Indeed, the very same sentence reads: "[T]he Court's ruling is that [Brother] has sole authority over trust assets *under the following conditions*." In short, Brother's assertion that the court initially granted him sole authority over trust assets, but then failed to include that provision in the final order, is inaccurate.

## E.     Costs and Attorney's Fees.

**¶31**     The Trust Code provides two distinct avenues for trustees to recover their attorney's fees and costs in trust litigation. Trustees are entitled to recover reasonable fees and costs *against the trust* under A.R.S. § 14-11004(A) where incurred in the good faith prosecution or defense of trust litigation. By contrast, trustees may recover fees and costs against *any other party* under A.R.S. § 14-11004(B) at the discretion of the superior court.

**¶32**     Brother and Sister sought an award of fees and costs against one another under A.R.S. § 14-11004(B). The superior court denied

---

[3]     At oral argument, Brother's counsel argued that the superior court had no authority to modify the duties of co-trustees. We disagree. For instance, the court has express authority to modify a trust "if continuation of the trust on its existing terms would be impracticable or wasteful or would impair the trust's administration," A.R.S. § 14-10412(B), and where, based on unanticipated circumstances, modification "will further the purposes of the trust," A.R.S. § 14-10412(A).

attorney's fees "on both sides," granted costs to Sister and denied costs to Brother. Both parties claim they were entitled to attorney's fees and costs.

**¶33**        We review an award of attorney fees and costs for an abuse of discretion and view the record in the light most favorable to upholding the trial court's decision. *In re Indenture of Trust Dated Jan. 13, 1964*, 235 Ariz. 40, 51, ¶ 41 (App. 2014). We will affirm if any reasonable basis exists for the decision. *Id*.

**¶34**        The court did not abuse its discretion in denying attorney's fees to both sides under A.R.S. § 14-11004(B). To be clear, the court was not pleased with either party, finding that "[Brother and Sister] have acted like children in this court, and . . . in administering this trust for the benefit of their mother. And it's been an ongoing problem between both of them." We affirm. [4]

**¶35**        Nor did the court abuse its discretion in awarding costs to Sister and denying them for Brother. For starters, Sister prevailed under any metric. Brother sued Sister with two objectives in mind. He wanted the court to either remove Sister as co-trustee or grant him unilateral authority to administer the trust. He received neither.

**¶36**        Brother and Sister likewise request their attorney's fees and costs on appeal under A.R.S. § 14-11004(B). We deny both requests in our discretion.

---

[4]        Sister also seeks an award of attorney's fees against the trust under A.R.S. § 14-11004(A), but only if her share of trust assets remains unaffected. Sister offers no authority for this hybrid fee approach and we find none. The statute identifies two distinct avenues to recover fees in trust litigation; it does not authorize or envision a litigant can travel both avenues at once. We deny her request for hybrid relief.

## CONCLUSION

¶37 We affirm. The superior court had substantial evidence to deny Brother's petition for removal and did not abuse its discretion in awarding attorney's fees and costs.



AMY M. WOOD • Clerk of the Court
FILED: AA