JOHN WILLIAMS et al., Respondents, v MOBIL OIL CORPORATION, Respondent, and PACE OLDSMOBILE, INC., Appellant.

Second Department, December 21, 1981

APPEARANCES OF COUNSEL

*A. Paul Goldblum (William F. McNulty* and *Anthony J. McNulty* of counsel), for appellant.

*Crowe, McCoy, Agoglia, Fogarty & Zweibel, P.C. (Morris Zweibel, Patrick J. Crowe* and *Raymond Carey* of counsel), for respondent.

**OPINION OF THE COURT**

HOPKINS, J. P.

This appeal confronts the correlative rights of the defendants between themselves in this action to recover damages for personal injuries allegedly suffered by the plaintiffs[1] as a consequence of the defendants' negligence. Essentially, the questions raised are directed toward certain contractual provisions executed by the defendants, one of which bars claims against the defendant Mobil Oil Corporation made 12 months beyond the incident whereby they arise, and the other of which creates a right of indemnity in favor of Mobil against the defendant Pace Oldsmobile, Inc., under stated conditions. These provisions appear in two contracts between the defendants.

Special Term granted Mobil's motion for summary judgment, dismissing a cross claim asserted by Pace against Mobil for damages said to have arisen from Mobil's negligence, and denied Pace's cross motion for summary judgment, dismissing the third cross claim of Mobil against Pace for indemnity with respect to the plaintiffs' complaint. Special Term determined that the contractual provisions precluded Pace's cross claim and that Pace's motion for summary judgment was premature, since primary liability by the defendants to the plaintiffs had not yet been resolved.

We modify. For reasons elucidated beyond, we find that the contractual provisions between the defendants are enforceable and that there is an issue of fact whether the time limitation clause applies to Pace's cross claim. However, we find that the claim of Mobil for indemnity against Pace is permissible in this action.

I

On May 1, 1975 a fire occurred in the basement of a building leased by Pace in New Rochelle, New York. Pace operated the premises for the sale and servicing of automo-

---

1. The plaintiffs are four firemen and their wives (who are suing for loss of consortium). A referral to "plaintiffs" in this opinion relates only to the firemen.

biles, and maintained gasoline pumps and tanks as part of its business. Two days before the fire, Pace's service manager had noticed an unusual odor in the basement in which the furnace was located and had called its fuel oil vendor. An employee of the supplier inspected the premises and suggested that the odor might be caused by a gasoline leak.

According to Pace, the service manager then called Mobil, which under agreements with Pace, supplied gasoline and also leased to Pace the pumps and tanks for the gasoline, on April 30, 1975, the day before the fire. A field engineer for Mobil responded, and after examining the premises, found that there were gas fumes present and that a leak existed; he said that he would make arrangements to have the tanks pumped out and filled with water to determine the point of the leak.

According to Mobil, though its field engineer examined the premises, his tests indicated that the fumes were not flammable, and he was unable to detect from the odor the identity of the substance that was causing the odor.

In any event, the field engineer, on the same day of his inspection, called a contractor frequently hired by Mobil and asked him to test the gasoline tanks for leaks. The contractor could not come to the premises at once, since he was engaged in a tank installation at another location; however, the contractor said he would meet the field engineer on the premises at 8:30 A.M. on May 1, 1975.

At 6 A.M. on May 1, 1975 an employee of Pace entered the basement and switched a sump pump into operation. When he did so, a fire ignited, requiring action by the New Rochelle fire department.

The plaintiffs are firemen who were injured in the course of extinguishing the blaze. In May, 1976 they instituted this action to recover damages for personal injuries, alleging that the fire was the result of Pace's and Mobil's negligence. Pace served an amended answer on Mobil in February, 1977, containing a cross claim against Mobil for property damage in the sum of $98,670.95, allegedly sustained from the fire. Pace's bill of particulars asserted that Mobil had failed to perform its obligation under an equipment loan agreement between the parties and had actual

or constructive notice of a dangerous condition arising from a leak in the gasoline tanks. In Mobil's second amended answer, it alleged an affirmative defense based on a 12-month limitation of action clause contained in a retail dealer contract between the parties, and a cross claim for indemnity under provisions in both the equipment loan agreement and the retail dealer contract.

Mobil then moved[2] for summary judgment dismissing Pace's cross claim, on the ground that the contractual limitation of action beyond 12 months after the fire barred the cross claim. Pace cross-moved for summary judgment dismissing Mobil's claim for indemnity.

Pace now appeals from the order of Special Term, granting Mobil's motion and denying Pace's cross motion.

## II

Two agreements embody the relationship between Pace and Mobil. Both are dated March 1, 1975.[3] The retail dealer contract by its terms ends on February 28, 1976; the equipment loan agreement has no fixed term, but terminates on written notice by either party.

The retail dealer contract provides for the sale of gasoline and allied products by Mobil to Pace according to a price schedule. The following conditions are prescribed:

"8. Claims. Any claim by Buyer for deficiency in quality or quantity shall be waived unless Seller is given notice and an opportunity to inspect within 5 days after delivery. Any claim by Buyer of any other kind, based on or arising out of this contract or otherwise, shall be waived unless Seller is given notice within 90 days after the event, action or inaction to which such claim relates. Any claim of any kind by Buyer based on or arising out of this contract or otherwise shall be barred, unless asserted by the commencement of an action within 12 months after the event, action or inaction to which such claim relates. In no event shall Seller be liable for prospective profits or special, indirect or consequential damages. The provisions of this

---

2. A prior motion by Mobil for summary judgment had been denied, without prejudice to a renewal after satisfaction of certain conditions.

3. Although both are effective as of March 1, 1975, apparently they were delivered by Mobil to Pace by letter dated June 16, 1975. This, it will be noted, is after the fire. Neither party bases any argument on this fact.

section shall survive any termination of this contract, however arising * * *

"10. Indemnity. Buyer shall indemnify and hold Seller harmless against all losses and claims (including those of the parties, their agents and employees) for death, personal injury or property damage arising out of (a) the use or condition of the premises (including adjacent sidewalks, drives and curbs) or the equipment and facilities thereon, regardless of any defects therein, (b) Buyer's nonperformance of this contract or (c) the storage and handling of products on the premises and against all fees, expenses and costs in connection with any of the foregoing. Seller does not warrant or guarantee any equipment or facilities."

The equipment loan agreement provides for the lease of gasoline tanks and pumps by Mobil to Pace. The following conditions are prescribed:

"1. Maintenance Obligations-Company. Company at its expense shall make repairs (including painting) deemed necessary by it to keep the equipment in good operating condition provided the necessity therefor is due to ordinary wear or to damage by the elements. Company's obligation to repair shall not arise until (a) Company is notified that the item in question is not in good operating condition and (b) Company shall have determined in its uncontrolled discretion and within a reasonable period that the necessity for repair is due to a cause referred to above. Borrower [Pace] shall either make the item harmless or shall not use it or permit it to be used until repaired. In lieu of repairing, Company may make replacements * * *

"3. Indemnity. Borrower shall indemnify and hold Company harmless against all losses and claims (including those of the parties, their agents and employees) for death, personal injury or property damage arising out of the use or condition of the equipment. Company does not warrant or guarantee the equipment."

It is upon these provisions in the contracts that both defendants depend.

## III

Pace's argument on appeal is that the two contracts are separate and distinct, covering entirely different subject matter, and each creating obligations peculiar to it. Pace points out that it relies on paragraph 1 of the equipment loan agreement as the foundation for its cross claim against Mobil, and that the equipment loan agreement contains no clause limiting the time of suit. It is error, in Pace's view therefore, to read into this agreement the time limitation clause stipulated only by the retail dealer contract. Pace urges that as Mobil drafted the agreements, they must be construed against Mobil whenever an ambiguity arises. Hence, it seeks reversal of so much of the order as grants summary judgment dismissing its cross claim.

It also argues that Mobil's cross claim for indemnity does not lie, either under the common law or under the equipment loan agreement, because Mobil cannot and did not protect itself in the event that the plaintiffs establish that Mobil was guilty of negligence in causing the injuries suffered by them.

## IV

Generally, the rule is that separate contracts relating to the same subject matter and executed simultaneously by the same parties may be construed as one agreement (*Rudman v Cowles Communications,* 30 NY2d 1, 13; *Palmer v Palmer,* 150 NY 139, 146; *Mott v Richtmyer,* 57 NY 49, 64-65; *Dynamics Corp. of Amer. v International Harvester Co.,* 429 F Supp 341, 346). The rule is applied even though in one of the contracts it is stated that there are not other contracts between the parties (3 Corbin, Contracts, § 578, p 407), or such contract does not refer in terms to the other (4 Williston, Contracts [3d ed, Jaeger], § 628, p 904). In the view of Wigmore, the true test "is whether the writing[s] intended to cover a *certain subject* of negotiation" (9 Wigmore, Evidence [Chadbourn rev], § 2430, pp 97-98). "In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances (cf. *Ripley v International Rys. of Cent. Amer.,* 8 N Y 2d 430, 437-438; see 6 Williston, Contracts [3d ed.], § 863)." *(Rudman v Cowles Communications, supra,* p 13.)

The rule, it should be observed, is couched in contingent terms — that is, the several contracts *may* be construed as one, dependent on the intent of the parties. Thus, Williston puts the test contingent on whether the parties assented to all the promises as a whole, so that there would have been no bargain if any promise or set of promises had been stricken (6 Williston, Contracts [3d ed, Jaeger], § 863, p 275; see *Kent v Universal Film Mfg. Co.,* 200 App Div 539, 550). The theme is illustrated in an English case referred to by Williston in which an insurance policy contained a one-year limitation for the bringing of suit, but a certificate of interest under the policy did not contain the time limitation. In deciding which of the two instruments prevailed, the court found that it was significant that the certificate on its face was entire and gave the holder no inkling that it was subject to the limitation contained in the policy. Since the holder of the certificate in that case had no knowledge of the provision of the policy, the court held that the limitation did not bind the holder *(Phoenix Ins. Co. of Hartford v De Monchy,* 141 LT 439 [HL, 1929], quoted in 4 Williston, Contracts [3d ed, Jaeger], § 628, pp 911-913).

In the case before us the two writings obviously relate to the same subject matter — the supply of gasoline by Mobil to Pace. As part of the bargain, Mobil leased to Pace tanks and equipment designed to store the gasoline on Pace's premises and to pump out of the tanks the gasoline sold to third parties. It is not clear on this record what the reasons were for incorporating the lease in one writing and the sales contract in another. Separate instruments may have suited the convenience of Mobil, or simply reflected the possibility, in the drafting of standard forms of agreement by Mobil, that a retailer might not require tanks or pumps since he already owned them. Nor are we told on this record whether the negotiations between the parties included any mention of the necessity of two contracts.[4]

It is true that the two contracts were prepared by Mobil and appear to be contracts of adhesion, usually narrowly

---

4. The record contains an indication that there had been agreements in force between the parties prior to the two agreements before us, but the details are not developed.

construed against the author (4 Williston, Contracts [3d ed, Jaeger], § 626, pp 855-857). It is also true that contracts between gasoline suppliers and dealers are regulated by statute in certain respects as a matter of public policy (General Business Law, §§ 199-a - 199-j, eff Oct. 1, 1975, L 1975, ch 265). However, the statute omits any reference to limitations of suit or indemnity clauses; and apparently it is not uncommon in franchise agreements to provide for indemnity by the franchisee in favor of the franchisor (see, e.g., 15 Business Organizations [Glickman], § 10.06, pp 10-114 — 10-119).

In the light of these principles we hold that we cannot on this record determine whether the two agreements between the parties should be read together, so that the provision in the retail dealer contract limiting the time for suit control Pace's cross claim under the equipment loan agreement. Hence, a trial is required to resolve the factual issue of the intent of the parties under the circumstances.

## V

The issue concerning Mobil's right of indemnity presents less difficulties. First, the plaintiffs are suing both Mobil and Pace. Under the familiar doctrine of *Dole v Dow Chem. Co.* (30 NY2d 143), now sanctioned by statute (CPLR 1401), contributions may be sought by one tort-feasor against another, whether the tort-feasors are joint, concurrent, or successive *(Schauer v Joyce,* 54 NY2d 1; Siegel, New York Practice, § 172, p 213).

Second, both of the contracts before us stipulate a right of indemnity on the part of Mobil against Pace. To some degree the provisions in the one differ from the other, but essentially their terms require Pace to "indemnify and hold [Mobil] harmless against all losses and claims (including those of the parties, their agents and employees) for death, personal injury or property damage arising out of the use or condition of the equipment" (equipment loan agreement), and to "indemnify and hold [Mobil] harmless against all losses and claims (including those of the parties, their agents and employees) for death, personal injury or property damage arising out of (a) * * * the equipment and facilities thereon, regardless of any defects therein

\*\*\* or (c) the storage and handling of products on the premises" (retail dealer contract).

Hence, the two contracts impose substantially the same obligation of indemnity on Pace, and no problem of contrary or conflicting provisions arises. Nor do we think that any problem of interpretation of the two clauses intervenes to prevent a finding of contractual indemnity in favor of Mobil.

Pace contends that the provisions do not in so many words evince the intention of the parties for indemnity against the negligence of Mobil itself. That argument attempts to renew a battle that subsided some years ago *(Levine v Shell Oil Co.,* 28 NY2d 205, 213; *Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153, 159; *Gross v Sweet,* 49 NY2d 102, 108). As was observed to apply in *Levine,* the indemnity provisions here were a part of the business relationship between the parties (p 213), and, as noted in *Hogeland,* represented an allocation of the risk of liability between the parties (p 161). Clauses similar to these provisions have been held to impose an obligation of indemnity (see, e.g., *B.L.W. Realty Holding Co. v Socony Mobil Oil Co.,* 32 AD2d 312, affd 26 NY2d 1002; *Corbett v Brown,* 32 AD2d 27, 33).

Here the provisions speak of indemnity in favor of Mobil against all *"losses* and *claims (including those* of the parties, their agents and employees)" (emphasis supplied). The use of such all embracing language manifests as a matter of law an intent to include indemnity of losses occasioned even by Mobil's own negligence.

## VI

Accordingly, we modify Special Term's order by reversing summary judgment in favor of Mobil and leaving to the trial the issue whether the limitation of time clause was intended to apply to Pace's cross claim; otherwise, we affirm the order.

Titone, Rabin and Bracken, JJ., concur.

Order of the Supreme Court, Westchester County, entered October 31, 1980, modified by (1) deleting therefrom the provision granting defendant Mobil Oil Corporation's

motion for summary judgment and (2) substituting therefor a provision denying said motion. As so modified, order affirmed, without costs or disbursements.