■ In the Matter of JERRY ROSMARIN, Deceased. JEFFRY ROSMARIN et al., Respondents; JEROME LAZARUS, Also Known as JERRY LAZARUS, et al., Appellants. — Appeal from an interlocutory order of the Surrogate's Court, Nassau County (Radigan, S.), dated July 23, 1984, which, after a nonjury trial, *inter alia,* ordered the dissolution and distribution in kind of the assets of the appellant partnerships and corporations between decedent's estate and appellant Jerome Lazarus.

Interlocutory order affirmed, with costs to petitioners payable by the appellants personally.

This proceeding involves the interpretation of a series of partnership and shareholders' agreements executed in 1967. For over 20 years prior to decedent Rosmarin's death, he, one Max Wallach, appellant Jerome Lazarus and Lazarus' father, Herman Lazarus, engaged in various joint real estate ventures which are the subject of these agreements. Beginning in or about 1966, Sol Kanov, appellant Lazarus' brother-in-law, began to participate in some of the ventures as well. The parties to this proceeding have stipulated that the two writings discussed herein are representative of all the agreements governing the various entities in which the venturers were involved.

The representative partnership agreement, executed by decedent, Wallach and the Lazaruses, provides, in pertinent part:

"3. That the term of the partnership shall begin from the date of this agreement until the demise of any one of the last two aforementioned surviving partners, it being the intent of this agreement that so long as there shall remain at least two living partners, the within partnership shall continue, so long as there shall remain at least two living partners from different teams as hereinafter set forth * * *

"7. That the capital of the partnership and of all other monies, as well as all instruments for the payment of money to the partnership, shall be deposited in the name of the partnership, in the FRANKLIN NATIONAL BANK, Franklin Square, New York and/or SECURITY NATIONAL BANK, 350 Main Street, Huntington, New York, and any other bank unanimously agreed upon, and all monies credited to the partnership shall be subject to withdrawal by check only and signed in the following manner:

"One of JEROME LAZARUS or HERMAN LAZARUS
with
"ONE OF JERRY ROSMARIN or MAX WALLACH * * *

"15. It is the intention of the parties hereto as heretofore provided in Paragraph 3, that so long as there shall remain two surviving partners, this partnership shall remain in full force and effect, and it is warranted, covenanted and agreed that the deceased partner's estate shall be paid the following sums in full payment of the deceased partner's interest without any further claim to and against said partnership and without any interference in either law or equity as to the continuance of the partnership."

This latter paragraph goes on to provide that every six months the partners will unanimously agree, in writing, upon the fair market value of the partnership property; within 15 days of a partner's death, $1,000 will be paid to his estate; that within six months of his death, 10% of the appraised value of his partnership interest will be paid to the estate, less the $1,000 advance and any other advances made, with 5% interest from the date of death; and finally, that the balance of the deceased partner's interest will be paid to his estate in the form of a second mortgage on the properties, bearing a 5% interest rate and payable in 40 quarterly installments.

The partnership agreement continues: "16. That, at the termination of the partnership, by the expiration of its term, or by reason of any other cause, a full and accurate statement shall be prepared, and the assets, liabilities and income, both gross and net shall be ascertained; the debts of the partnership shall be discharged; and all monies and other assets of the partnership then remaining shall be divided in specie between the parties, share and share alike."

The representative shareholders' agreement, entered into by decedent, Wallach, the Lazaruses and Kanov, provides, in part, as follows:

"6. That the capital of the corporation and of all other monies, as well as all instruments for the payment of money to the corporation, shall be deposited in the name of the corporation, in

the FRANKLIN NATIONAL BANK, Franklin Square, New York, and/or SECURITY NATIONAL BANK, 350 Main Street, Huntington, New York, and any other bank unanimously agreed upon, and all monies credited to the corporation shall be subject to withdrawal by check only and signed in the following manner:

"one of JEROME LAZARUS, or HERMAN LAZARUS
or SOL KANOV
with
"one of JERRY ROSMARIN or MAX WALLACH * * *

"14. It is the intention of the parties hereto that the within corporation will remain in full force and effect and it is warranted, covenanted and agreed that if any shareholder shall die, the said deceased shareholders estate shall be paid the following sums in full payment of the deceased shareholders interest without any further claim of and against said corporation and without any interference in either law or equity as to the continuance of the partnership.

"(a) Within fifteen (15) days from the date of death, the corporation shall pay to the estate of the deceased outgoing shareholder, the sum of $1,000.00.

"(b) The value of the shareholders estates and the interest of any deceased shareholder shall be determined as follows: The parties herein shall meet every six months and shall unanimously agree in writing to the aforementioned value. In computing the value, the parties shall be deemed to have considered the purchase price, return on investment, etc. and the first mortgage and any other pertinent factors to determine the current fair market value.

"The said values as above unanimously agreed upon in writing and attached to this agreement shall be the amount of payment which shall be made to the estate of the deceased shareholder, who shall have died subsequent to any of the above semi-annual appraisals. In the event that any shareholder is ill, incapacitated, or unable to act for any other reason, the values as agreed upon by JEROME LAZARUS and JERRY ROSMARIN shall be binding as to value during the illness, incapacitation or inability to act for any reason of such shareholder. If all of the members of a team are ill, incapacitated or unable to act for any reason, the above values must be determined by arbitrators to be appointed by the American Arbitration Society."

The agreement then sets forth a valuation procedure identical to that set forth above in the partnership agreement and continues further: "15. That, at the termination of the corporation, by the * * * expiration of its term, or by reason of any other cause a full and accurate statement shall be prepared, and the assets,

liabilities and income, both gross and net shall be ascertained; the debts of the corporation shall be discharged; and all monies and other assets of the corporation then remaining shall be divided in specie between the parties, share and share alike. Said statement shall be prepared by the then employed accountancy firm and so long as the same shall be prepared according to good accounting practices as used previously by the shareholders, the same shall be conclusive as to values, assets, and other data."

Both Wallach and Herman Lazarus predeceased decedent. Kanov's interest was purchased by the partnerships and corporations in question shortly before decedent's death.

Following the submission of decedent's will to probate, petitioners, as executors of his estate, brought this proceeding seeking, *inter alia,* an order dissolving the various partnerships and corporations and directing a division of the assets. A trial was thereafter held on the application, at the conclusion of which the Surrogate ruled in favor of the executors. This appeal ensued.

It is the executors' position that the assets are to be equally distributed in kind between the estate and the sole surviving partner/shareholder, appellant Jerome Lazarus, pursuant to paragraph 16 of the partnership agreement and paragraph 15 of the shareholders' agreement. Appellants, on the other hand, contend that the estate's interest is limited to the buy-out provision set forth in paragraph 15 of the partnership agreement and paragraph 14 of the shareholders' agreement.

The Surrogate determined that the only ambiguity inherent in the partnership agreement concerns the reference to the "teams" in paragraphs 3 and 15. He resolved this ambiguity by reference to the check-drawing provision, finding that decedent and Wallach constituted one team while the Lazaruses constituted the other. The Surrogate ruled that, other than the one ambiguity, the partnership agreement clearly and unambiguously provided for dissolution upon the death of the penultimate partner and, therefore, all extrinsic documentary and testimonial evidence was excluded. We affirm.

The Surrogate correctly determined that the sole ambiguity presented by the partnership agreement concerned the definition of the teams and properly resolved the ambiguity by finding that these teams were composed of decedent and Wallach, and the Lazaruses, respectively. In every other respect the partnership agreement is clear and unambiguous on its face. Therefore, extrinsic evidence of prior or contemporaneous negotiations is

inadmissible to vary its meaning (see *Marine Midland Bank-Southern v Thurlow,* 53 NY2d 381). Paragraph 3 clearly indicates that the partnership was to continue so long as there remained at least one living partner from each team. Paragraph 16 expressly provides that, upon the expiration of the partnership team, the entity would be dissolved and the assets would be equally distributed in kind. Decedent was the penultimate surviving partner. Accordingly, the partnership terminated upon his death, triggering the operation of the dissolution provision.

The shareholders' agreement should be construed in the same manner as the partnership agreement. Although they are separate contracts, they relate to the same subject matter and were part of the same business transaction and, therefore, should be interpreted in a consistent fashion (see *Williams v Mobil Oil Corp.,* 83 AD2d 434). It is evident from the record that the parties intended all their enterprises to be governed by a consistent scheme, irrespective of whether the entity was organized as a partnership or as a corporation. The shareholders' agreement provides for dissolution upon the expiration of the corporation's term. Although that term is never explicitly set forth in the agreement, when it is read in conjunction with the partnership agreement, it is apparent that, as with the partnership, the corporation was to terminate through dissolution with the death of the penultimate partner, decedent herein.

The documentary evidence offered by appellants does not contradict this conclusion. The subsequent agreements entered into by the parties did not affect any change in the dissolution provisions contained in the 1967 agreements. Furthermore, all of these agreements and decedent's will were executed while more than two partners were living. Assuming, *arguendo,* that appellants' testimonial evidence to the effect that the parties always intended that the survivor would take all was deemed credible, our conclusion would remain the same. A court may not, under the guise of interpretation, rewrite a written contract so as to make it express the parties' purported real intention, if to do so would contradict the clear mandate of the contract (*Rodolitz v Neptune Paper Prods.,* 22 NY2d 383).

Accordingly, the interlocutory order is affirmed. Weinstein, J. P., Brown, Rubin and Eiber, JJ., concur.