■ EQUIVALENT PHARMACEUTICAL INDUSTRIES CORPORATION, INC., Appellant, v SECURITY PACIFIC BUSINESS CREDIT, INC., Respondent.—Order, Supreme Court, New York County (Harold Baer, Jr., J.), entered on or about August 6, 1990, which, inter alia, granted defendant's motion for summary judgment and dismissed the complaint, unanimously affirmed, with costs.

In 1987, defendant became the primary lender to Ford Laboratories ("Ford"). Ford defaulted on its loans which enabled defendant to foreclose on the collateral. Since plaintiff ("EPIC") was interested in buying Ford, plaintiff induced defendant not to foreclose on this loan. A Letter of Intent provided, inter alia, that plaintiff would pay defendant between $75,000 and $100,000 for a junior participation in the loan agreement between defendant and Ford. An "Extension Agreement" extended the effectiveness of the loan until July 31, 1989.

On June 12, 1989, plaintiff and defendant entered into the Junior Participation Agreement ("JPA") and plaintiff paid defendant $100,000. The JPA provides that: "The principal of [EPIC's] participation shall be payable by [Security Pacific] to [EPIC] only on the termination of all of the transactions of [Ford] with [Security Pacific], and only out of any surplus received by [Security Pacific] remaining after the payment in full to [Security Pacific] of all loans and monies owing to [Security Pacific] under said [Loan] Agreement or otherwise".

The JPA also notes that plaintiff is aware that defendant has made no representations or warranties as to the transaction and that plaintiff knows that Ford has defaulted under the Loan Agreement. The JPA could not be modified or amended orally.

Plaintiff sent a letter to defendant (the "Instruction Letter") explaining that the $100,000 was sent "in accordance with our understanding that such sum shall be advanced to [Ford] over and above the new receivable availability."

Plaintiff entered into a "Management Agreement" with Ford whereby plaintiff was afforded the right to manage Ford to determine if it would ultimately be wise to purchase Ford. On June 14, 1989, plaintiff decided that it would not be wise to buy Ford.

Thereafter, plaintiff attempted to cancel the JPA and demanded the return of its $100,000 previously paid to defendant. Defendant did not return the money and plaintiff instituted this action. The IAS court granted defendant's motion for summary judgment and dismissed plaintiff's complaint based upon the clear language of the JPA. We agree.

The JPA is a wholly integrated contract between plaintiff and defendant, and is unambiguous. There is no reason to refer to any other agreements in order to determine the intent of the JPA. (See, e.g., West, Weir & Bartel v Carter Paint Co., 25 NY2d 535, 540, mot to amend remittitur granted 26 NY2d 969.) Moreover, the other agreements which plaintiff urges this Court to consider in order to determine the intent of the JPA are agreements to which defendant was not a party. Accordingly, they have no relevance under the circumstances. (Cf., Williams v Mobil Oil Corp., 83 AD2d 434.)

While plaintiff relies on the Instruction Letter to enforce its right to have the $100,000 returned, the Instruction Letter is expressly subject to the JPA. Moreover, pursuant to the language of the JPA an oral understanding between the parties cannot modify or amend the express terms of the JPA.

We have considered all other claims and find them to be without merit. Concur—Carro, J. P., Wallach, Ross and Rubin, JJ.