■ In the Matter of the Estate of WILLIAM AJAR, Deceased. RUTH AJAR, Appellant-Respondent; VIDEO PROJECTS, CO., INC., et al., Respondents-Appellants. [655 NYS2d 608] —In a probate proceeding, *inter alia,* for the rescission of a shareholders' agreement, the petitioner appeals from so much of (1) an order of the Surrogate's Court, Nassau County (Radigan, S.), dated January 2, 1996, as granted that branch of the cross motion of

the respondents Karen Ajar Vincenzini, Video Projects Co., Inc., and Video Projects Technical Operations, Inc. Profit Sharing Plan which was to strike the jury demand on the petitioner's first through tenth causes of action, and (2) an order of the same court, dated March 18, 1996, as granted (a) those branches of the motion of Karen Ajar Vincenzini, Video Projects Co., Inc., and Video Projects Technical Operations, Inc. Profit Sharing Plan which were for summary judgment dismissing the petitioner's second and third causes of action, and summary judgment dismissing so much of the first cause of action as sought an "independent determination" of the value of the corporation, (b) that branch of the motion of Jankoff, Sakofsky, Yegelwel & Gabe, P. C., Jankoff & Gabe, P. C., John H. Jankoff, and Lawrence M. Gabe which was for summary judgment dismissing the petitioner's twelfth cause of action, and (c) that branch of the motion of L.H. Rosoff & Co., Samuel Stern, and Barry Blank which was for summary judgment dismissing the petitioner's fifteenth cause of action; Karen Ajar Vincenzini, Video Projects Co., Inc., and Video Projects Technical Operations, Inc. Profit Sharing Plan cross-appeal, as limited by their briefs, from so much of (1) the order dated January 2, 1996, as denied the branch of their motion which was to strike the jury demand on the petitioner's sixteenth cause of action, and (2) the order dated March 18, 1996, as denied those branches of their motion which were for summary judgment dismissing the first cause of action in its entirety and for summary judgment dismissing the petitioner's fourth, fifth, sixth, seventh, eighth, ninth, tenth, and sixteenth causes of action; Jankoff, Sakofsky, Yegelwel & Gabe, P. C., Jankoff & Gabe, P. C., John H. Jankoff, and Lawrence M. Gabe, cross-appeal from stated portions of (1) the order dated January 2, 1996, which, *inter alia,* denied the branches of their motion which were to vacate the petitioner's Note of Issue and Statement of Readiness and to strike the jury demand on the petitioner's eleventh, twelfth, and sixteenth causes of action, and (2) the order dated March 18, 1996, which, *inter alia,* denied their motion for summary judgment dismissing the petitioner's eleventh and sixteenth causes of action; and L.H. Rosoff & Co., Samuel Stern, and Barry Blank cross-appeal, as limited by their brief, from (1) the order dated January 2, 1996, and (2) so much of the order dated March 18, 1996, as denied their motion for summary judgment on the petitioner's fourteenth and sixteenth causes of action. Jankoff, Sakofsky, Yegelwel & Gabe, P. C., Jankoff & Gabe, P. C., John H. Jankoff, and Lawrence M. Gabe, and L.H. Rosoff & Co., Samuel Stern, and Barry Blank also cross-appeal from stated portions of three

decisions of the same court, dated December 12, 1995, January 4, 1996, and February 22, 1996, respectively.

Ordered that the appeals from the decisions are dismissed, as no appeal lies from a decision *(see, Schicchi v Green Constr. Corp.,* 100 AD2d 509); and it is further,

Ordered that the order dated March 18, 1996, is modified, on the law, by deleting the provisions thereof which denied the branches of the respective motions and cross motion which were for summary judgment dismissing the remainder of the first cause of action, and the fourth, fifth, sixth, seventh, eighth, eleventh, fourteenth, and sixteenth causes of action and substituting therefor provisions granting those branches of the motions and cross motion; as so modified, the order dated March 18, 1996, is affirmed insofar as appealed and cross-appealed from; and it is further,

Ordered that the appeal and cross appeals from the order dated January 2, 1996, are dismissed as academic in light of our determination on the appeal and cross appeals from the order dated March 18, 1996; and it is further,

Ordered that the respondents-appellants appearing separately and filing separate briefs are awarded one bill of costs, payable by the petitioner personally.

The decedent, William Ajar, and his late brother Albert each held 50% of the stock of Video Projects Co., Inc. (hereinafter the Company), which is engaged in the business of installing and maintaining closed-circuit television systems at racetracks. In 1981 the brothers entered into a shareholders' agreement pursuant to which they agreed, among other things, that if one of the brothers died, the Company would buy his shares at an agreed-upon price. The price was set forth in a Schedule B, attached to the agreement. The schedule was updated in 1983, and in 1989 the brothers revised the entire agreement to include certain provisions made necessary by their recent decision to have the Company treated as a subchapter S corporation for income tax purposes. The Schedule B attached to the 1989 agreement provided for a buyout price of $1.75 million, the same amount provided for in the Schedule B attached to the 1981 agreement, as updated in 1983.

William died in February 1990, and the petitioner, his widow, was appointed executrix of his estate. Albert died four months later, and his daughter, the respondent Karen Ajar Vincenzini, was appointed executrix of his estate. When the Company attempted to buy William's shares from his estate, the petitioner objected, claiming that the brothers never intended that the 1989 agreement, and particularly its Schedule B, be

enforced. She claimed that the Company was worth far more than $3.5 million and that Albert had purposely undervalued the assets of the Company in the 1989 Schedule B in order to mislead his wife, whom he was then in the process of divorcing.

In this proceeding, the petitioner asserted 16 causes of action against the respondents. She sought a variety of relief, ranging from the rescission or partial rescission of the 1989 agreement to damages for breach of contract by the Company and professional malpractice committed by the Company's attorneys and accountants. After joinder of issue and extensive discovery, all of the parties moved for summary judgment. While the summary judgment motions were pending, the petitioner filed a Note of Issue and Statement of Readiness and requested a jury trial on all of her causes of action. The respondents-appellants moved to vacate the Note of Issue and Statement of Readiness on the ground that it had been filed before discovery was complete. They also sought to strike the jury demand, claiming that the petitioner's causes of action were essentially equitable in nature and should therefore be tried to the court.

By order dated January 2, 1996, the Surrogate's Court, finding that discovery was complete, denied the motion to vacate the Note of Issue and the Statement of Readiness. The court also struck the jury demand for the first 10 causes of action and severed the remaining causes of action for a later trial, if necessary. By order dated March 18, 1996, the Surrogate granted summary judgment to the respondents-appellants on the second, third, twelfth, and fifteenth causes of action and partial summary judgment to the respondents-appellants on the first cause of action.

The petitioner sought rescission of the 1989 agreement on the ground that the parties never intended that agreement to be binding. However, the record does not support this contention. Moreover, it is well settled that where, as here, the terms of a written contract are clear and unambiguous, extrinsic evidence of prior or contemporaneous negotiations is inadmissible to vary the agreement's terms (see, Fidelity N. Y. v Madden, 212 AD2d 572, 573; Matter of Rosmarin, 107 AD2d 689, 692-693). The petitioner has therefore failed to raise a triable issue of fact as to the enforceability of the 1989 agreement or its Schedule B.

Nor did the petitioner raise a triable issue of fact as to whether she and Albert agreed to terminate the agreement after William's death. Paragraph 11 of the agreement provides, in relevant part, that the parties may terminate or change the

agreement and that such termination or "change shall become effective when reduced to writing and signed by the parties". General Obligations Law § 15-301 (2) provides that agreements containing such provisions cannot be terminated by a subsequent executory agreement "unless such executory agreement is in writing and signed by the party against whom enforcement of the discharge is sought"; that statute further provides that such agreements cannot be terminated by mutual consent "unless such termination is effected by an executed accord and satisfaction * * * or is evidenced by a writing signed by the party against whom it is sought to enforce the termination."

The record is clear that the parties never formally agreed in writing to terminate the agreement. Moreover, there is no indication in the record that Albert and the petitioner mutually consented to terminate the agreement. It is undisputed that Albert never mentioned the agreement to the petitioner in his lifetime, and the petitioner claims she did not learn of its existence until after Albert's death. Under the circumstances, there could have been no meeting of the minds on this point.

Because the petitioner has failed to establish that she suffered any damages, her causes of action sounding in malpractice and fraudulent and tortious interference with contract should have been dismissed.

In light of the foregoing, the issues of the timing of the Note of Issue and the Statement of Readiness, as well as the petitioner's entitlement to a jury trial, are academic.

The petitioner's remaining contentions are without merit. Sullivan, J. P., Joy, Friedmann and Florio, JJ., concur.