■ MICHAEL NETTLES, Appellant, v LSG SKY CHEFS et al., Respondents. [941 NYS2d 643]—

In an action to recover damages for employment discrimination on the basis of race, harassment, and unlawful retaliation in violation of Executive Law § 296, and to recover damages for common-law fraud, the plaintiff appeals from an order of the Supreme Court, Queens County (Hart, J.), dated July 2, 2010, which granted the defendants' motion for summary judgment dismissing the complaint.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the defendants' motion which was for summary judgment dismissing the first cause of action, which alleged employment discrimination on the basis of race, and substituting therefor a provision denying that branch of the defendants' motion; as so modified, the order is affirmed, without costs or disbursements.

In November 1997, the plaintiff, an African-American, while employed as a Vice President of Manufacturing Operations for Beech-Nut Nutrition Corporation (hereinafter Beech-Nut), was

solicited for a position at John F. Kennedy International Airport (hereinafter JFK) with the defendant LSG Sky Chefs (hereinafter LSG), a food service company that provides prepared foods to airlines. The position was identified as "Vice President Operations-JFK," with an annual base salary of $125,000. In addition, LSG offered the plaintiff a cost of living allowance for his first four years of employment. LSG sent a letter to the plaintiff memorializing the terms of its offer. LSG's offer letter did not indicate that the plaintiff was assigned a certain grade level within the company for the purpose of salary and benefits. Upon his hire, the plaintiff was the only African-American vice president in the LSG organization.

When the plaintiff commenced his employment with LSG in December 1997, a memorandum was circulated announcing that he was joining LSG as a "Vice President Designate." The plaintiff was not informed prior to accepting employment with LSG that he would be denominated only as a "Designate." The memorandum indicated that the plaintiff would report directly to John VanDervoort, "Vice President, Operations." An LSG organizational chart for LSG's "Core Operations" and another for LSG's Corporate Structure showed that VanDervoort was the Vice President for JFK on the same executive level as Pepe Pinto, who was Vice President for Dallas, Bill Andres, who was Vice President for Chicago, John Dye, who was Vice President for Los Angeles International Airport, and the defendant Dennis Mancini, who was Vice President for Miami.

Thereafter, in April 1998, LSG announced that the plaintiff would be assuming the role of "Vice President Operations for JFK and JFK-I," replacing VanDervoort, who was leaving LSG. The plaintiff's salary and benefits did not change to reflect that he was assuming VanDervoort's position.

In July 1998, Mancini, who commenced his employment with LSG in 1996, was appointed to the position of "Vice President, Core Operations-New York," overseeing JFK and LaGuardia Airports. As a result, he became the plaintiff's direct supervisor. The plaintiff claims that, over the next two years, Mancini repeatedly undermined, humiliated, and disrespected him.

In 1999, the plaintiff discovered that his base salary was lower than that of other vice presidents who had the same or lesser responsibilities than he had. He also discovered that he had been offered fewer stock options than other vice presidents and that it had been decided, during a meeting attended by certain vice presidents and from which he had been excluded, that he would not be included in the "Core Vice President" bonus pool for 1998 bonuses, but, rather, would be included in the "New

York Market" bonus pool. In April 1999, the plaintiff made a complaint to LSG about the pay disparity, his exclusion from the vice presidents' bonus pool, and Mancini's treatment of him. In October 1999, the plaintiff also requested and was promised a fixed cost-of-living adjustment (hereinafter COLA), but was later denied that adjustment.

In November 1999, the plaintiff requested that Mancini address a situation about which the plaintiff was informed in which racial comments were made by another employee. According to the plaintiff, Mancini's response to the incident was insensitive and inappropriate and was indicative of Mancini's discriminatory animus towards African-Americans in general.

In January 2000, the plaintiff retained an attorney to communicate with LSG about its investigation into the plaintiff's complaints. In March 2000, the plaintiff applied for a position overseeing the Los Angeles market, but did not get it. In June 2000, LSG announced that the plaintiff was appointed to the position of "Vice President Core Operations, JFK." Despite this promotion, he was to continue to report to Mancini.

In September 2000, the plaintiff applied for and subsequently obtained a position as the vice president overseeing the Florida core market. His annual base salary increased to $158,500.

In March 2001, the plaintiff commenced this action against LSG and Mancini alleging employment discrimination based on race, a hostile work environment, and unlawful retaliation in violation of Executive Law § 296, as well as common-law fraud. The defendants moved for summary judgment dismissing the complaint. The Supreme Court granted the defendants' motion. The plaintiff appeals, and we modify.

In order to establish entitlement to judgment as a matter of law dismissing the first cause of action, which alleged discrimination based on race in violation of Executive Law § 296 (1) (a), the "defendants [had to] demonstrate either plaintiff's failure to establish every element of intentional discrimination, or, having offered legitimate, nondiscriminatory reasons for their challenged actions, the absence of a material issue of fact as to whether their explanations were pretextual" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]; *see Morse v Cowtan & Tout, Inc.*, 41 AD3d 563 [2007]; *Cesar v Highland Care Ctr., Inc.*, 37 AD3d 393, 394 [2007]; *DelPapa v Queensborough Community Coll.*, 27 AD3d 614 [2006]; *Hemingway v Pelham Country Club*, 14 AD3d 536 [2005]). The defendants established their prima facie entitlement to judgment as a matter of law dismissing the first cause of action by submitting evidence that LSG had legitimate nondiscriminatory reasons for the differ-

ence in pay and stock options between the plaintiff and other vice presidents, the denial of the plaintiff's request for a fixed COLA, and the plaintiff's placement in the New York Market pool versus the Core Vice President bonus pool in 1998. They explained that the reason for the difference in pay and stock options was that the plaintiff was a grade-level 23 executive reporting to Mancini, who was a grade-level 24 executive and, therefore, the plaintiff was comparing himself to individuals who held the job title of "Vice President/Core Operations." They also provided evidence that LSG amended its COLA policy in 1996 prior to the plaintiff's employment, so that all new COLAs were required to decline to zero over a four-year period and, therefore, the only employees with fixed COLAs were those hired prior to the policy change. As for the bonus pool, the defendants showed that the plaintiff was placed in the New York Market pool because he was a grade-level 23 executive and that the Core Vice President bonus pool only included the vice presidents of various "Core" markets, such as Mancini, who reported to "Core Markets" Vice President Kevin Bruce.

However, the Supreme Court improperly determined that the plaintiff failed to raise a triable issue of fact with respect to that branch of the defendants' motion which was for summary judgment dismissing the first cause of action. The plaintiff submitted evidence that he assumed VanDervoort's position as a Core Vice President, which required him to report to a Group Vice President. Further, VanDervoort had been a grade-level 24 executive. The plaintiff also presented organizational charts which showed that VanDervoort was on the same executive level as other Core Vice Presidents, such as Pinto, Andres, Dye, and Mancini, when Mancini was in charge of the Miami market, reporting to the same Group Vice President. The plaintiff then reported to the same Group Vice President as the other Core Vice Presidents as of April 1998 when he assumed VanDervoort's position. Further, another organizational chart, prepared after Mancini moved to the New York market, showed Dye, Pinto, Mancini, and the plaintiff on the same executive level. Thus, the plaintiff raised a triable issue of fact as to the reason why he was deemed to be a grade-level 23 executive versus a grade-level 24 executive when he was given his former superior's title and responsibilities without a commensurate increase in salary, change in grade, or participation in the Core Vice President's bonus pool regardless of the fact that, at some point after the plaintiff assumed VanDervoort's position, he had to report to Mancini. As to the defendants' proffered reasons for the disparate treatment between the plaintiff and the other vice presidents, the plaintiff raised triable issues of fact as to whether the

rationale for LSG's organizational structure following Mancini's promotion in July 1998 vis-à-vis the plaintiff's grade level, salary, and benefits, and the basis by which LSG determined an employee's pay grade, were pretextual. Although the defendants contend that the plaintiff defined his peers as those holding the same title as his supervisor Mancini, the plaintiff's evidence raises a triable issue of fact as to why the plaintiff, who apparently rose to the same level as the other Core Vice Presidents following VanDervoort's departure, was treated differently from the manner in which they were treated. In addition, the plaintiff submitted evidence that, although Mancini was ineligible for COLA according to LSG's policy, Mancini requested and was granted a fixed rather than declining COLA, while the plaintiff's request for similar relief was denied. Accordingly, the Supreme Court should have denied that branch of the defendants' motion which was for summary judgment dismissing the first cause of action alleging employment discrimination on the basis of race.

With respect to the plaintiff's claim that he was subjected to racial harassment in violation of Executive Law § 296, the Supreme Court properly awarded summary judgment to the defendants dismissing the second cause of action. A hostile work environment exists where the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (*Harris v Forklift Systems, Inc.*, 510 US 17, 21 [1993] [internal quotation marks and citation omitted]; *see Forrest v Jewish Guild for the Blind*, 3 NY3d at 310). Various factors, such as frequency and severity of the discrimination, whether the allegedly discriminatory actions were threatening or humiliating or a "mere offensive utterance," and whether the alleged actions "unreasonably interfere[ ] with an employee's work" are to be considered in determining whether a hostile work environment exists (*Forrest v Jewish Guild for the Blind*, 3 NY3d at 310-311). The allegedly abusive conduct must not only have altered the conditions of employment of the employee, who subjectively viewed the actions as abusive, but the actions must have created an "objectively hostile or abusive environment—one that a reasonable person would find to be so" (*id.* at 311). "[M]ere personality conflicts must not be mistaken for unlawful discrimination" (*id.* at 309).

Here, the defendants established, prima facie, their entitlement to judgment as a matter of law dismissing the plaintiff's hostile work environment claim by presenting evidence that the allegedly offensive conduct was nothing more than intermittent

work-related conflict. Further, there was only one incident involving comments of a racial animus by another employee, which did not involve the plaintiff, who was not present. In opposition, the plaintiff failed to raise a triable issue of fact, since he presented evidence showing only that he subjectively perceived all of the incidents to be race-based discrimination by Mancini and not that Mancini's actions were objectively offensive and pervasive enough to have created a hostile work environment (*id.* at 311). As a matter of law, neither the plaintiff's personality conflict with Mancini nor the one isolated incident of derogatory comments made outside of the plaintiff's presence by another employee are severe, offensive, or pervasive enough to amount to a hostile work environment under the Executive Law (*id.* at 310-311). Thus, the Supreme Court properly granted that branch of the defendants' motion which was for summary judgment dismissing the second cause of action.

As to the third cause of action, which asserted retaliation in violation of Executive Law § 296 (1) (e) and (7), the defendants met their prima facie burden by showing that there was no causal connection between the plaintiff's complaints of discrimination and any of the alleged retaliatory actions, many of which occurred before the plaintiff complained of discrimination (*see Forrest v Jewish Guild for the Blind*, 3 NY3d at 312). Further, the defendants presented evidence that, subsequent to the plaintiff's complaints of discriminatory treatment, the plaintiff was promoted on several occasions and given favorable performance reviews. In opposition, the plaintiff failed to raise a triable issue of fact as to whether there was any causal connection between his complaints of discrimination and the allegedly discriminatory actions.

The Supreme Court properly granted that branch of the defendants' motion which was for summary judgment dismissing the fourth cause of action, which alleged fraud. To properly plead a cause of action to recover damages for fraud, the plaintiff must allege that (1) the defendants made a representation of fact which was false and which the defendants knew to be false, (2) the misrepresentation was made in order to induce the plaintiff's reliance, (3) there was justifiable reliance on the part of the plaintiff, and (4) the plaintiff was injured by the reliance (*see Selechnik v Law Off. of Howard R. Birnbach*, 82 AD3d 1077 [2011]). The measure of damages in a fraud cause of action is " 'indemnity for the actual pecuniary loss sustained as the direct result of the wrong,' " so that a plaintiff is compensated for what he or she actually lost and not for what he or she may have gained in the absence of the alleged fraud (*Lama Holding*

*Co. v Smith Barney,* 88 NY2d 413, 421 [1996], quoting *Reno v Bull,* 226 NY 546, 553 [1919]).

The plaintiff alleged that the defendants committed fraud by inducing him to leave his former employment with Beech-Nut by falsely representing that his title with the defendants would be that of a Vice President, rather than Vice President Designate, a trainee position, the actual title he received upon commencing employment with LSG. The defendants established their prima facie entitlement to judgment as a matter of law dismissing the fourth cause of action by showing that the plaintiff was given the "Designate" title only during his initial four months with LSG before being appointed to a "full" Vice President position upon VanDervoort's departure in April 1998. Moreover, the defendants demonstrated that the plaintiff made the same salary as a Vice President Designate that he had been offered by LSG as a "full" Vice President and, thus, was not damaged by the alleged fraud. In opposition, the plaintiff failed to raise a triable issue of fact (*see e.g. Ferdico v Zweig,* 82 AD3d 1151, 1154 [2011]; *Selechnik v Law Off. of Howard R. Birnbach,* 82 AD3d at 1077). Mastro, A.P.J., Chambers, Austin and Cohen, JJ., concur. **[Prior Case History: 28 Misc 3d 1206(A), 2010 NY Slip Op 51198(U).]**