In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals (1), as limited by its brief, from so much of an order of the Supreme Court, Suffolk County (Emerson, J.), dated June 3, 2010, as, in effect, granted that branch of the defendants’ motion which was for a protective order quashing its subpoenas seeking discovery related to certain unpleaded causes of action, and (2) from an order of the same court dated December 22, 2010, which denied its motion for leave to reargue its opposition to that branch of the defendants’ motion which was for a protective order and, in effect, for resettlement of the decretal provisions of the order dated June 3, 2010.
Ordered that the appeal from the order dated December 22, 2010, is dismissed, as no appeal lies from an order denying *945 resettlement of the substantive or decretal provisions of a prior order or judgment, or from an order denying reargument (see Braun v Edwards Trucking & Warehousing, Inc., 68 AD3d 699, 700 [2009]; Matter of Kosowski v Kosowski, 61 AD3d 689 [2009]); and it is further,
Ordered that the order dated June 3, 2010, is affirmed insofar as appealed from; and it is further,
Ordered that one bill of costs is awarded to the defendants.
An agreement was executed on January 11, 2000, by the Long Island Power Authority (hereinafter LIPA), Suffolk County, Nassau County, the Town of Brookhaven, the Shoreham-Wading River Central School District, the Wading River Fire District, and the North Shore Library District (hereinafter the Shoreham Agreement). Pursuant to the Shoreham Agreement, LIPA waived certain claims it had against several Suffolk County taxing jurisdictions for refunds of certain payments made in lieu of taxes. Additionally, LIPA aggregated the remaining obligation owed by these same jurisdictions pursuant to a judgment held by LIPA relating to property tax over-assessments. After the waiver and aggregation, the taxing jurisdictions owed LIPA a refund of approximately $620 million.
To assist the taxing jurisdictions in funding payment of their settlement obligations, LIPA issued bonds (hereinafter the Tax Settlement Bonds). A surcharge imposed on Suffolk County ratepayers in accordance with the Shoreham Agreement was to be used to pay the debt service, related charges, and obligations incurred in connection with the Tax Settlement Bonds. The amounts received by LIPA pursuant to the Shoreham Agreement were to be used to provide rebates and credits to ratepayers in Suffolk County, Nassau County, and the Rockaways. In addition, LIPA agreed to provide additional credits to ratepayers from its own funds.
To ensure Nassau County’s acquiescence with the Shoreham Agreement, LIPA entered into a separate agreement with Nassau County on January 13, 2000 (hereinafter the Nassau Agreement). Pursuant to the Nassau Agreement, LIPA agreed to give ratepayers in Nassau County and the Rockaways additional rebates totaling $25 million and to provide Nassau County with a grant of approximately $20 million from LIPA’s clean energy fund. Suffolk County was not a party to the Nassau Agreement.
The instant appeals arise from litigation commenced in 2002 by the plaintiff, County of Suffolk, individually and on behalf of the rate payers of the County of Suffolk, following the issuance of the Tax Settlement Bonds pursuant to the Shoreham Agreement. After issuing Tax Settlement Bonds totaling approxi *946 mately $325 million to assist the taxing jurisdictions with repaying some of their obligations under the settlement, LIPA used a portion of the bond money to pay the various rebates and credits provided for in the Shoreham Agreement. The remaining bond proceeds, totaling $220 million, were invested through a repurchase agreement and earned interest money. That interest money was used by LIPA to pay a significant portion of the additional $25 million in rebates owed to the Nassau County and Rockaways ratepayers under the Nassau Agreement.
After the defendants joined issue in this action, the parties commenced discovery. In 2008, following disclosure of more than 11,000 documents by the defendants, the plaintiff served an amended complaint based upon audits of the disclosed documents. The defendants served an answer in response to the amended complaint. The plaintiff made requests for additional discovery to support unpleaded claims, issuing subpoenas for depositions from nonparty witnesses. In particular, the plaintiff sought evidence to support its claim that LIPA’s use of the interest money earned from the invested Tax Settlement Bonds proceeds to pay a substantial portion of additional rebates owed to Nassau County and Rockaways ratepayers pursuant to the Nassau Agreement constituted a breach of the Shoreham Agreement. The plaintiff further contended, inter alia, that LIPA made misrepresentations with respect to the intended use of the proceeds from the sale of the Tax Settlement Bonds. The defendants moved, inter alia, to quash the subpoenas, solely on the ground that the unpleaded claims were without merit. The Supreme Court, inter alia, in effect, granted that branch of the defendants’ motion, and the plaintiff appeals.
CPLR 3101 (a) provides that “[tjhere shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof.” Nevertheless, unlimited disclosure is not mandated, and the rules provide that the court may issue a protective order “denying, limiting, conditioning or regulating the use of any disclosure device” to “prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts” (CPLR 3103 [a]; see Accent Collections, Inc. v Cappelli Enters., Inc., 84 AD3d 1283 [2011]; Spohn-Konen v Town of Brookhaven, 74 AD3d 1049 [2010]; Palermo Mason Constr. v Aark Holding Corp., 300 AD2d 460, 461 [2002]). “Generally, the supervision of disclosure is left to the broad discretion of the trial court, which must balance the parties’ competing interests” (Accent Collections, Inc. v Cappelli Enters., Inc., 84 AD3d at 1283; see Kooper v Kooper, 74 AD3d 6, 17 [2010]; Palermo Mason Constr. v Aark Holding Corp., 300 AD2d at 461).
*947 Here, the plaintiff sought additional evidence, inter alia, related to an unpleaded breach of contract cause of action. “ ‘The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties’ intent’ ” (Maser Consulting, P.A. v Viola Park Realty, LLC, 91 AD3d 836, 836 [2012], quoting Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; see Dysal, Inc. v Hub Props. Trust, 92 AD3d 826, 827 [2012]; Staples the Off. Superstore E., Inc. v Flushing Town Ctr. III, L.P., 90 AD3d 638, 639 [2011]). The best evidence of the parties’ intent is their own writing. “Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms” (Greenfield v Philles Records, 98 NY2d at 569; see Albert Jacobs, LLP v Parker, 94 AD3d 919 [2012]; Scotto v Georgoulis, 89 AD3d 717, 718-719 [2011]; Ross v Sherman, 57 AD3d 758 [2008]). The threshold question of whether a contract is unambiguous, and the subsequent construction and interpretation of a contract determined to be unambiguous, are issues of law within the province of the court (see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 163 [1990]; Maser Consulting, P.A. v Viola Park Realty, LLC, 91 AD3d at 837; Franklin Apt. Assoc., Inc. v Westbrook Tenants Corp., 43 AD3d 860, 861 [2007]). Where the language of the contract “was written so imperfectly that it is susceptible to more than one reasonable interpretation,” it will be considered ambiguous (Brad H. v City of New York, 17 NY3d 180, 186 [2011]). Extrinsic evidence of the parties’ intent may not be admitted to create ambiguity in a contract that is unambiguous on its face (see Brad H. v City of New York, 17 NY3d at 185-186; W.W.W. Assoc. v Giancontieri, 77 NY2d at 163; Scotto v Georgoulis, 89 AD3d at 718).
The plaintiff contends that the Nassau Agreement is not extrinsic evidence. Rather, the plaintiff asserts that the Nassau Agreement must be considered when interpreting the Shoreham Agreement because the two contracts are part of the same transaction. “Generally, the rule is that separate contracts relating to the same subject matter and executed simultaneously by the same parties may be construed as one agreement” (Williams v Mobil Oil Corp., 83 AD2d 434, 439 [1981]; see Nau v Vulcan Rail & Constr. Co., 286 NY 188, 197 [1941]; Davimos v Halle, 60 AD3d 576 [2009]; Liberty Natl. Bank v Gross, 201 AD2d 467, 468 [1994]). However, “[contracts remain separate unless their history and subject matter show them to be unified” (131 Heartland Blvd. Corp. v C.J. Jon Corp., 82 AD3d 1188, 1190 [2011]). To determine whether contracts are separable or entire, “ ‘the primary standard is the intent manifested, viewed in the surrounding circumstances’ ” (G.K. Alan Assoc. Inc. v Lazzari, *948 66 AD3d 830, 833 [2009], quoting Williams v Mobil Oil Corp., 83 AD2d at 439 [citations omitted]; see 131 Heartland Blvd. Corp. v C.J. Jon Corp., 82 AD3d at 1190; Davimos v Halle, 60 AD3d at 576).
Here, only LIPA and Nassau County executed the Nassau Agreement, while the Shoreham Agreement was executed by LIPA, Suffolk County, Nassau County, the Town of Brookhaven, the Shoreham-Wading River Central School District, the Wading River Fire District, and the North Shore Library District. Although the two agreements addressed similar subject matter, they manifested separate intentions related to the interests of the specific parties involved. Accordingly, the Supreme Court properly determined that the Nassau Agreement was a contract independent of the Shoreham Agreement and, thus, was extrinsic evidence.
A review of the Shoreham Agreement reveals that it is “complete, clear and unambiguous on its face” and, thus, it must be enforced according to the plain meaning of its terms (Greenfield v Philles Records, 98 NY2d at 569; see Albert Jacobs, LLP v Parker, 94 AD3d 919 [2012]; Scotto v Georgoulis, 89 AD3d at 718-719; Ross v Sherman, 57 AD3d at 758). Pursuant to its terms, “[t]he proceeds of any Tax Settlement Bonds shall be invested by [LIPA] and any earnings therefrom shall be applied, at [LIPA’s] discretion.” Consequently, LIPA was authorized to utilize the investment earnings from the Tax Settlement Bonds to settle its obligations under the Nassau Agreement.
With respect to the plaintiffs unpleaded cause of action alleging fraud, the plaintiff contends that the defendants misrepresented the intended use of the proceeds from the sale of the Tax Settlement Bonds. The relevant documents the defendants prepared in conjunction with the bond sale set forth that, in addition to funding the rebates and credits due under the Shoreham Agreement, some proceeds would be used to fund the additional rebates and grant money owed to Nassau County and Rockaways ratepayers pursuant to the Nassau Agreement. However, the total principal proceeds obtained from the initial sale of the Tax Settlement Bonds were insufficient to cover the total costs of rebates and grant money due under the Nassau Agreement. Thus, the plaintiff contends that the documents prepared by the defendants misrepresented how these proceeds would be used.
To properly plead a cause of action to recover damages for common-law fraud, a plaintiff must allege “a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages” *949 (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009]; see New York Univ. v Continental Ins. Co., 87 NY2d 308, 318 [1995]; Pace v Raisman & Assoc., Esqs., LLP, 95 AD3d 1185, 1188-1189 [2012]; Orchid Constr. Corp. v Gottbetter, 89 AD3d 708, 710-711 [2011]). Here, there is no evidence that the plaintiff relied upon the alleged misrepresentations or suffered any harm as a result, both necessary elements of a fraud cause of action (see Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d at 559; New York Univ. v Continental Ins. Co., 87 NY2d at 318; Pace v Raisman & Assoc., Esqs., LLP, 95 AD3d at 1188-1189; Orchid Constr. Corp. v Gottbetter, 89 AD3d at 710-711). Significantly, the plaintiff was not a purchaser of any Tax Settlement Bonds, and the documents relating to the sale of the Tax Settlement Bonds were not part of the Shoreham Agreement. Thus, the plaintiff had no reason to rely upon any documents relating to the sale of Tax Settlement Bonds and it did not suffer any harm from misrepresentations contained therein (see Nettles v LSG Sky Chefs, 94 AD3d 726, 731-732 [2012]; JAF Partners, Inc. v Rondout Sav. Bank, 72 AD3d 898 [2010]; Apollo H.V.A.C. Corp. v Halpern Constr., Inc., 55 AD3d 855, 857 [2008]).
Since the plaintiffs unpleaded causes of action were without merit, it was not entitled to additional discovery related to these causes of action.
The plaintiffs remaining contentions are without merit.
Accordingly, the Supreme Court properly, in effect, granted that branch of the defendants’ motion which was for a protective order quashing the plaintiffs subpoenas, so as to “prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts” (CPLR 3103 [a]; see Accent Collections, Inc. v Cappelli Enters., Inc., 84 AD3d at 1283; Spohn-Konen v Town of Brookhaven, 74 AD3d at 1049; Palermo Mason Constr. v Aark Holding Corp., 300 AD2d at 461). Eng, PJ., Florio, Sgroi and Miller, JJ., concur.